ELLIS PYLE V. EASTERN SEED COMPANY ET AL.

No. A-817. Decided December 31, 1946.
(198 S. W., 2d Series, 562.)

*W. B. Moss* and *John Dawson*, both of Sinton, *Eskridge & Groce*, and *Walter Groce*, all of San Antonio, for petitioner.

It was error for the Court of Civil Appeals to hold that the non-warranty clause in the order sheet relieved respondent of liability for the breach of its contract to deliver the Babosa onion seed it contracted to sell petitioner, petitioner's right of recovery not being for the breach of an implied warranty, but of the very contract itself to deliver to him the Babosa onion seed he agreed to purchase and paid for. Smith v. Oscar H. Will & Co., 51 N. D. 357, 199 N. W. 861; Rocky Mountain Seed Co. v. Knorr, 92 Colo. 320, 20 Pac. (2d) 304; Edinburg v. Dunlap Hdw. Co. 267 S. W. 258.

*Keys, Holt & Head, John D. Hyde,* and *Birge Holt,* all of Corpus Christi, for respondents.

MR. JUSTICE SLATTON delivered the opinion of the Court.

Pyle recovered a judgment in the district court of San Patricio County against Eastern Seed Company for the sum of $5,200.00. The judgment of the trial court was rendered upon the following findings of the jury:

1. The seller, in selling 50 pounds of seed to the buyer, represented that the seed were babosa onion seed.

2. That the buyer relied on the representation that the seed were babosa onion seed.

3. That the seed sold were not babosa onion seed.

4. That if the seed had been as represented the buyer would have raised a crop of babosa onions and that such crop would have had a market value of $5,200.00.

5. That the buyer did not have notice of the contents of the nonwarranty clause printed in the body of the purchase agreement before the seed were planted.

6. That the buyer did not have notice of the contents of the nonwarranty clause printed on each of the sacks of onion seed before the same were planted.

The Court of Civil Appeals at San Antonio reversed the judgment of the trial court and rendered judgment in favor of the Eastern Seed Company. 191 S. W. (2d) 708.

The question presented to this court for decision arises out of the following contract:

"Order Sheet                                                  1052
EASTERN SEED CO.
Wholesale and Retail Seeds
Insecticides and Dusting Sulphur
Corpus Christi, Texas

Date                  9-6-1943

"Sold to ELLIS PYLE
P. O. Address Odem, Texas

Shipping Address_____

How Ship _____When Ship_____

_____

TERMS: Cash. Payable in Corpus Christi. F.O.B. Corpus Christi.

_____

NOTICE: All sales subject to loss or damage by fire, shortage or failure of crops, and contingencies beyond control. Eastern Seed Co. gives no warranty, express or implied, as to description, purity, productivity, or any other matter of any seed we may send out, and we will not be in any way responsible for the crop.

_____

| QUANTITY | ARTICLE | PRICE | PER |
|----------|---------|-------|-----|
| 50 # | Babosa onion seed | Market | |

Subject to our ability to obtain
Price quote lots for your approval

_____

State Distributors Mississippi Pedigreed Stoneville and Delfes Cotton Seed

_____

This order is taken 'subject to confirmation' by Eastern Seed Company, and in case of crop shortage is subject to pro rata delivery on exactly the same basis that Eastern Seed Company receives from their grower or supplier.

Signature of Buyer: (Signed) ELLIS PYLE

Signature of Salesman: (Signed) JOE KIRKPATRICK"

■ Pyle contends that the failure of the seller to furnish him the variety of onion seed contracted to be delivered is a breach of the contract, and such breach sustains the judgment of the trial court. This contention is sound enough if the contract did not contain what is generally designated as a nonwarranty clause. The buyer and the seller were free to make whatever contract they desired, so long as its provisions were not illegal or immoral. They agreed that the seller gave no warranty, express or implied, as to description, purity or productivity, and would not be in any manner responsible for the crop. In other words, the buyer agreed to this provision of the contract and bought the seed knowing that the seller was protecting itself under the nonwarranty provision. It is firmly established that where parties have signed, and thereby entered into a written contract, they are bound by its provisions. White, Ward & Erwin v. Hager, 112 Texas 516, 248 S. W. 319. The soundness of the above rule cannot be successfully questioned. To allow Pyle a recovery in the face of the nonwarranty clause would, in our

opinion, render nugatory and meaningless an important clause of the contract. We have not been cited to a case, nor have we found one, in which this question has been decided by this court. The decisions of other jurisdictions are not in harmony. See notes contained in 16 A. L. R. 880, and supplemental notes contained in 32 A. L. R. 1244, 62 A. L. R. 454, and 117 A. L. R. 476. We adopt the following statement contained in the opinion in the case of Leonard Seed Company v. Crary Canning Co., 147 Wis. 166, 132 N. W. 902, as sound:

"Neither of the parties here are under guardianship or incompetent to contract. There is no claim that the contract signed was not the one agreed upon or that both parties did not fully understand what they were agreeing to. Plaintiff (seed seller) plainly undertook to relieve itself from liability in case of intermixture and defendant agreed that it should be relieved. It is not claimed that the contract is void because contrary to public law or to public policy, and if not, effect should be given to it. * * * If it be conceded that the contract is one-sided, it must also be conceded that the parties had a right to make a one-sided contract if they saw fit."

The case of Lumbrazo v. Woodruff, 256 N. Y. 92, 175 N. E. 525, 75 A. L. R. 1017, by the New York Court of Appeals, has the following reasoning which we think is sound:

"Neither party was obliged to enter into this contract, and there is no public policy which prevents adult persons of sound mind making such agreements as they please not prohibited by statute or contrary to natural justice and good morals. This court and other courts have recognized the validity of agreements limiting or excluding implied warranties."

Pyle relies on the cases of Smith v. Oscar H. Will & Co., 51 N. D. 357, 199 N. W. 861, and Rocky Mountain Seed Co. v. Knorr, 92 Colo. 320, 20 Pac. (2d) 304, and Hoffman v. Dixon, 105 Wis. 315, 81 N. W. 491. It is to be observed in these cases that the nonwarranties relied on were not contained in the written contract between the parties, but appeared either on the sacks or in the literature of the seller; also the seed contracted for were not delivered at all, but other and different seed were delivered in each of the cases. In the present case the non-warranty clause is contained in the written contract between the parties and said nonwarranty appears to have been printed on the sacks in which the seed were delivered. The seed actually delivered were admittedly onion seed, but not of the variety

contracted for, that is, babosa onion seed. Our decision here is therefore confined to a written contract where the nonwarranty clause is contained in it. The seed delivered were onion seed, but not of the variety contracted.

Since the parties were free to make whatever contract they desired, and having agreed to the nonwarranty clause, we conclude that each should be bound thereby.

■ We deem it appropriate to point out that this suit is not one for the recovery of the purchase price of the onion seed. Pyle's theory of recovery is two fold, one for a breach of contract, the other for fraud, but on both theories the damage alleged is the market value of the crop that would have been produced on the fifty-two acres of land had the land been planted to Babosa onions.

Pyle filed a motion in the trial court praying for judgment in his behalf on the verdict of the jury. Pursuant to the motion the trial court rendered judgment in Pyle's favor against the seed company for $5,200.00, which sum the jury had found to be the market value of the onions had the land been planted to Babosa onions.

The seed company appealed to the Court of Civil Appeals. Pyle did not request the trial court to render a judgment in his favor for the purchase price of the onion seed; neither did he complain in the Court of Civil Appeals of the failure of the trial court to do so.

Moreover, the application for writ of error which Pyle filed in this court does not complain of his failure to recover the price paid for the onion seed. It is therefore apparent that as the record is presented before us, a decision of whether Pyle has a good cause of action for the recovery of the purchase price paid for the onion seed is immaterial.

The Court of Civil Appeals correctly reversed the judgment of the trial court and rendered judgment in favor of the seed company. Its judgment is affirmed.

Opinion delivered December 31, 1946.

MR. JUSTICE TAYLOR, dissenting.

I respectfully dissent from the opinion of the majority. Jones v. George, 61 Texas 345. The sole point of difference is whether

Pyle is entitled to judgment for the price ($400.00) paid the company for the seed it delivered him on the order made for Babosa onion seed. It is my opinon that he was. The majority say that a decision of whether he "has a good cause of action" for the recovery of "the purchase price paid," is *immaterial;* and this, because of what the majority call Pyle's "two-fold theory of recovery." The majority designate his first theory as "one for a breach of contract." I agree with that designation. The record clearly discloses he sued for damages resulting from a breach of contract. The record discloses, however, that there was no other theory of recovery.

It appears from the record and the principles stated and applied in Jones v. George, that what the majority designate as a "fraud" theory of recovery is not another *cause of action* for recovery. Pyle by his averments concerning *fraud* did not allege *another* and *inconsistent* cause of action such as fraud on the part of the company based on deceit, as will subsequently be disclosed by a statement of the pleadings of the parties.

The record discloses that Pyle is a farmer who resides in San Patricio County, has been growing cotton, feed and vegetables for many years and for about two years has been growing onion crops also, raising his first crop of Babsoa onions from seed in 1942-43. The company (owned by Curtis Clark who resides in Corpus Christi, Nueces County) maintained two places of business under the name of Eastern Seed Company, one at Corpus Christi, and one at Taft in San Patricio County. Joe Kirkpatrick was in charge of the business at Taft.

Pyle alleged that he went to the Taft store to purchase Babosa onion seed. Babosa was the variety he desired. The company was handling only two varieties, Bermuda and Babosa, and had on hand when it took Pyle's order for that variety, only the Bermuda. An order for the desired variety was made by the company. The order sheet dated September 6, 1943, signed by Pyle and Kirkpatrick, who was in charge of the Taft store, is set out in both the opinion of the Court of Civil Appeals and the majority opinion. It appears from the order sheet that among the matters specified was the stipulation that the "Article" ordered was "Babosa onion seed," and that the "Quantity" ordered (subject to the company's "ability to obtain") was 50 *pounds.* The stipulations are not in controversy, since they appear in the order sheet.

Pyle alleged the amount paid for the seed, $8.00 per pound

for 50 pounds, and that the seed purchased under the order were not Babosa onion seed. In addition to pleading a non-performance, or simple breach of contract clause of action, Pyle alleged as additional (consistent) facts concerning *fraud* (as distinguished from fraud *sounding in deceit*) that he believed and relied on the company's representations. Pyle did not allege, nor seek to prove, that the company knew the seed were not Babosa onion seed. In this case, as is said by Judge Stayton in Jones v. George, "there is nothing in the record to indicate that the * * * (seller) did not honestly believe that he was selling and delivering the thing which * * * (the seller) contracted to sell and deliver,. nor to indicate that the * * * (buyer) had the slightest idea that he was receiving anything else under his contract."

The company pleaded, in addition to its general denial and special exceptions, a non-warranty clause contained in the order sheet. One of the company's exceptions complained that Pyle did not allege it *knew* the seed "was not Babosa onion seed." This effort to channel the controversy into an action for fraud sounding in deceit and make an additional, or alternative theory of recovery, was not successful. The exception was not even presented to the court for his ruling.

The company alleged specially that it did not give any warranty in this case, and that it would not be *"responsible for the crop"* (Italics mine) ; also that *the company had a custom of not giving warranties,* as was evidenced by the non-warranty provision appearing on the bags in which it delivered its seed and also on its stationery and invoices disclaiming warranties.

There was no subsequent amendment by Pyle. He simply alleged that in virtue of the facts stated in his petition that he had been damaged in the sum of $7,800.00. He prayed for judgment in that amount, but prayed *also for "general relief."* (Italics mine.) Having alleged the amount paid the company for 50 pounds at $8.00 per pound and its breach of the contract, it was within his pleadings and his prayer for general relief, to recover that amount, notwithstanding he was not entitled to crop damages. Lee v. Boutwell, 44 Texas 151; Verschoyle v. Holifield, 132 Texas 516, 526, 123 S. W. (2d) 878; Davis v. Standard Rice Co. (Civ. App.), 293 S. W. 593. In the case last cited Judge Pleasants says in the opinion that "it is not necessary for a plaintiff to plead any specific rule for the measure of damages claimed by him"; and further, that "all that is required is that he plead the facts which entitled him to recover damages and state the amount claimed and *it is for the court to*

*apply the rule of measurement called for by the evidence.* (Italics mine).

It also appears from the record as shown by the evidence that the majority is incorrect in its statement that Pyle had a two-fold theory. The case proceeded to trial before the court with a jury on Pyle's alleged cause of action for breach of contract. Kirkpatrick testified he sold Pyle 50 pounds of Babosa onion seed and of the signing of the order by both parties. Clark testified that he "knew the seed were sold to Pyle for Babosa seed," and insisted that Pyle received that variety. Kirkpatrick said he knew what Pyle desired was Babosa onion seed, and that he sold the seed to him as such; that he took the order early in September for delivery under it "when the seed were available"; and that when the seed came over later on September 22nd from the Corpus Christi store he advised Pyle by telephone they had arrived and for him to come for them, which he did September 24th; and that he sold Pyle 50 pounds delivered, at $8.00 per pound ($400.00) and received that price therefor.

On the company's defense that the seed delivered under the order were Babosa, Pyle's testimony was not at variance with that stated. All agreed that no one could tell by inspection to what variety onion seed of any kind belongs. Pyle testified that the onions of the crop grown from the planting did not look like Babosa onions even after they had got as "big as a lead pencil," and that *he thought* they were Babosa until he took the first onion buyer out to see the crop about the middle of March; that at different times through the last half of March and through April he took out other buyers, four in number, naming them, trying to get an offer for the growing crop before he gave up; and that as the crop was worthless he plowed it up about the middle of June. Will McDaniel, a neighbor farmer with nearby fields (from one to two miles away) testified that he planted Babosa onion seed that same year (1943) and that on the same kind of soil and under the same kind of cultivation and weather conditions, his 80 acre field grew 75 bushels per acre of Babosa onions. He said he saw Pyle's crop and that the *onions were not Babosa.* Frank Sims, another buyer, testified he saw Pyle's crop from time to time, knew Babosa onions, and that Pyle's were not Babosa; that he saw the crop in December and figured they weren't Babosas and saw it at intervals until in March and April and then told Pyle the onions were not Babosas. "I didn't tell him," he said, that "I didn't *believe* they were not," but told him "they were not Babosas." (Italics mine.)

The seed company endeavored to show that the onion seed delivered was Babosa onion seed by (1) adducing testimony that a shipment of that variety was received from the Charles H. Lilly Company of the State of Washington, (2) that they were grown under the Lilly Company's plan of producing Babosa onion seed and shipped direct to the Eastern Seed Company at Corpus Christi, and (3) that the Corpus Christi store sent half of the shipment to the Taft store, which delivered 50 pounds thus received to Pyle. In a further effort to show that the seed was Babosa the Eastern Seed Company had Charles J. Steele, the Lilly Company's Supervisor of Seed Production, come from Seattle, Washington, and testify concerning that company's process of producing onion seed and the extreme care exercised in shipping to its buyers what it produced. The company adduced testimony to show that Babosa onion seed did not always grow Babosa onions. This was to explain (from the company's viewpoint) why Babosas were not grown from Pyle's planting, if they were not, (which it denied). The witness used for this purpose was E. Martensen, Superintendent of the State Experimental Station near Crystal City, Texas. He gave as one reason, among others, that the daylight hours in Washington were longer than in Texas at the time the onions are supposed to bulb.

So it appears from the evidence that the case was not tried as a fraud case in which fraud sounding in deceit was relied upon, or as a case in which accident or mistake was alleged; but was tried as a breach of contract suit with Pyle believing and relying upon the company's representations.

It appears also that when the taking of testimony was finished, *both parties* moved for an instructed verdict and that both motions were overruled; and further, that the cause was submitted upon special issues, including an issue inquiring whether the seed delivered to Pyle were Babosa onion seed; and that the responsive finding of the jury was that "they were not." As the findings on all of the issues were answered in favor of Pyle the remaining findings need not be stated.

The record discloses that when the court received the verdict Pyle moved for judgment in his favor on the verdict and the company moved for judgment in its favor notwithstanding the verdict. Both motions were duly considered, the company's was overruled, and judgment was rendered for Pyle for the market value of a crop ($5,200.00), which the jury found he would have raised had he planted Babosa onion seed. The court prop-

erly overruled both motions, the company's, that Pyle recover nothing; and Pyle's, that he recover $5,200.00 as crop damage. It thus appears from the record that it was established on the trial by the jury's finding, on conflicting evidence, that the contract was breached and, from the undisputed evidence, that Pyle paid the company $400.00 for the seed delivered. It follows that the correct judgment for the trial court to enter was in Pyle's favor for that amount.

The governing principles in the premises are stated by this Court in Jones v. George. The case used by Judge Stayton as illustrative of the relief that would be available in case of a non-performance of a seed contract, was Wolcott, Johnson & Company v. Mount, 36 N. J. Law, 262, 266, which he thus quoted:

"The right to repudiate the purchase for the non-conformity of the article delivered to the *description under which it was sold* is universally conceded. That right is founded on the engagement of the vendor by *such description* that the article delivered shall correspond with the description. *The obligation rests upon the contract.* Substantially the description is warranted. It will comport with sound legal principles to treat such engagements *as conditioned* in order to afford *the purchaser* a more enlarged remedy by rescission than he would have on a *simple warranty;* but when his situation has been changed, and the remedy, by repudiation, *has become* impossible, no reason *supported by principle* can be adduced why he should not have upon his contract such redress as is practicable under the circumstances. In that situation of affairs the only available means of redress is by an action for damages. Whether the action be *technically* considered an action on the warranty or an action for *the non-performance of a contract;* is *entirely immaterial.*" (Italics mine).

This Court also said in Jones v. George in stating another applicable principle, that "in all cases of civil injury resulting from breach of contract * * * the law gives as near as may be done, compensation for *the actual loss sustained.*" (italics mine) ; also that confusion had arisen in many of the cases from "the unfortunate use of the word 'warranty';" and that "a warranty is an express or implied statement of something which a party undertakes shall be a part of the contract, and, though a part of the contract, *collateral to the express* object of it"; (italics not mine), and quotes from the authorities cited (which goes to the very gist of the present case) to the effect that in many cases the circumstances of a party selling a particular thing by its proper description *"has been called a warranty,* and the

breach of such a contract, a breach of *warranty"*; and points out that "it would be better to distinguish such cases as a *non-compliance with a contract which a party* has engaged to fulfill." The Court took pains in Jones v. George to say that there was *"no warranty* to sell the customer peas, as the *contract was to sell beans."* (Italics not mine.) The Court, still quoting, said that if the seller sold the buyer some thing else instead of the article the buyer agreed to buy it was *a non-performance of the contract,* and further that "when rescission has become impracticable," that is *"when the thing delivered has been consumed in testing it,* it would seem, whether the action be on *a warranty* (or a) *breach of contract,* the relief would be the same." (Italics mine).

The trial court in entering judgment for $5,200.00 as crop damage erred, because the contract stipulated that the company *would not be responsible for the crop.* The company was therefore protected so far as resulting damage on account of crop failure was concerned.

The judgment which the trial court should have entered was for Pyle for $400.00. Such was the measure of recovery called for by the evidence. The *collateral* provision in the order for the seed that the company gave "no warranty as to description, purity, or productivity, or any other matter of any seed we may send out," did not protect the company in event of non-performance of its contract from a proper measure of damage. The stipulation collaterally in the contract of what the company was not obligationg itself to do by way of warranty, could not abrogate the obligation of the contract itself. As stated in Jones v. George, the *contract itself* obligated the company to deliver to Pyle the article, (Babosa onion seed) he contracted to buy. The effect of the non-warranty, in its broadest application, would be to protect the company from damage resulting from the planting of any seed it might send out, that is, crop damage. Jones v. George; Handy v. Roberts (Civ. App.), 165 S. W. 37; Markham Warehouse & Elevator Co. v. Plotner & Stoddard (Civ. App.), 140 S. W. 356; Harkey v. Hindman (Civ. App.), 19 S. W. (2d) 151; American Warehouse Co. v. Ray (wr. ref.), 150 S. W. 763; Cheboygan Paper Co. v. Eichberg, 184 Mich. 30, 150 N. W. 312. Judge Fly in the Plotner & Stoddard case quoted from Columbian Iron Works v. Douglass 84 Md. 44, 34 Atl. 1118, the holding that in case of delivering any article other than that which "was the named and designated, the specific and identical, thing contracted for * * *," the buyer had "the right to insist on the terms of his contract." Judge Fly

quoted also from Fogel v. Brubaker 122 Pa., 7, 15 Atl. 692, as enunciating the same principle enunicated in Jones v. George, that if the vendor of an article sells it by a designated description, "It is a *condition precedent*" that the article delivered should answer that particular description, and that in event the condition was not performed, the purchaser may reject the article, "or, *if he has paid for it he may recover back the price as money had and received * * *.*"* (Italics mine.) The trial court should therefore have rendered judgment for Pyle under his prayer for general relief for the amount paid the company by Pyle for the article agreed to be delivered.

On appeal the Court of Civil Appeals correctly reversed the trial court's judgment. 191 S. W. (2d) 708. Instead, however, of rendering a proper judgment it rendered an *improper* judgment that Pyle recover nothing. This was error. Since the essential facts were not in dispute and had been fully developed, the Court of Civil Appeals should have rendered the judgment the trial court should have rendered. Had the facts (other than on the issue of whether the seed ordered were delivered) been in dispute, or the case not fully developed, or for other reasons not pertinent here, the proper judgment of the Court of Civil Appeals would have been, on reversing the judgment below, to remand the cause. London Terrace v. McAlister, (Com. App.), 142 Texas 608, 180 S. W. (2d) 610; Yarbrough v. Booher, 141 Texas 420; 174 S. W. (2d) 47; Smirl v. Globe Laboratories, 144 Texas 41, 188 S. W. (2d) 676; Texas Indem. Ins. Co. v. Bush (wr. ref.), 163 S. W. (2d) 224. Under Texas Rules of Civil Procedure—Rule 434, the Courts of Civil Appeals upon reversing a trial court's judgment are required to "render such judgment or decree as the court below should have rendered." The same duty is enjoined upon the Supreme Court in Rule 505 that it— "shall * * * render such judgment as the Court of Civil Appeals should have rendered."

The Court of Civil Appeals was not bound by the trial court's finding that the article delivered on the order was not Babosa onion seed. Had it decided the evidence was not sufficient to support the finding, that would have settled the case. *That was the basic question in the controversy.* The trial court was bound by the finding because there was substantial evidence, though conflicting, to support it. The Court of Civil Appeals, though in doubt as to the sufficiency of the evidence to support the finding, chose to let the finding stand an decided the case on its construction of the collateral non-warranty clause that its effect

was to protect the company from *all liability*, notwithstanding its breach of the contract; and erroneously rendered judgment that Pyle recover nothing.

Pyle filed a motion for rehearing in the Court of Civil Appeals and, in due course after the motion was overruled, filed an application for writ of error. The first point of error alleged in the application is as follows:

"The Court of Civil Appeals erred in holding that the non-warranty clause in the order sheet copied in its opinion relieved the respondents of liability for the breach of its contract to deliver the Babosa onion seed it contracted to sell petitioner, *petitioner's right of recovery not being for breach of an implied warranty, but of the very contract itself to deliver to him the Babosa onion seed he agreed to purchase and paid for.*" (Italics mine.)

The second point alleged substantially that the court erred in holding that the non-warranty clause relieved the company of *all liability* for its failure to deliver to Pyle the Babosa seed he agreed to purchase. It is unnecessary to state the remaining assignments. The two stated sufficiently answer the concluding statement of the majority to the effect that the assignments of error are insufficient.

It was on the complaints urged in the first point of error, namely, that the company was liable for its breach of the contract and that the non-warranty clause did not relieve it from such liability, that this Court granted the writ. The only ruling adverse to Pyle's claim for crop damage was when the Court of Civil Appeals held (erroneously) he was entitled to recover nothing, and left undisturbed the finding which established the non-performance of the contract. It was not necessary for Pyle to amend and seek, by specific prayer, a resulting damage covered by his prayer for general relief. The prayer, inasmuch as the trial established the essential facts and the law fixed the measure of damage in the premises, left open but one alternative for the courts, whose duty it is to apply the law to the facts. This left the parties free, in the premises, to come to the appellate courts, not in the spirit of gambling upon verdict, but in confidence that the law would be applied to the established facts. Davis v. Standard Rice Co., supra; and not having done so, the Court of Civil Appeals should have rendered the judgment which the trial court should have rendered. Cases cited page 9. This

Court should therefore render the judgment which the courts below should have rendered. Idem.

With respect to the company's specially pleaded defense that "its custom * * * in the operation of its seed business, is * * * to the effect that it * * * did not in this particular case" give warranties as to the matters contained in the non-warranty clause, I merely quote the following from Judge Fly's opinion in American Warehouse Co. v. Ray, supra:

"It would present a singular propostion of law if a dealer in seeds should contract to deliver cabage seed and should actually deliver radish or turnip seed, and then escape liability on his implied warranty by proof that dealers in seed had adopted, a rule or custom not to be bound by any implied warranty."

The majority accept the conclusion reached by the Court of Civil Appeals in its citation of Leonard Seed Co. v. Crary Canning Co. 147 Wis., 166, 132 N. W. 903; and quotes in its opinion to the effect that the "seed seller" in that case "undertook to relieve itself from liability" in case of "intermixture" of the seed. Pyle seeks no damage for "intermixture" of seed. He assumed the risk of that by the signed stipulation of the parties, as he did *every other risk* except that of losing $400.00.

Under the majority holding Pyle must lose this amount paid for the seed under the facts above detailed, without wrong on his part (unless suing and praying specially for crop damage, as well as any damage within his allegations, and also prayed for by prayer for *general relief*, be a wrong). The majority so hold without mention in their opinion of Jones v. George and the governing principles stated by Judge Stayton and in the multitude of cases subsequently applying those principles. In Smirl v. Globe Laboratories, supra, this Court committed itself to the holding that "the office of a rule of procedure is to facilitate, rather than hinder, a speedy and final determination of all law suits in that way which will secure to litigants their substantial rights and to promote the peace and good order of the state."

Being unable to agree with the conclusion reached by the majority I respectfully dissent.

Opinion delivered December 31, 1946.

Chief Justice Alexander and Associate Justice Sharp concurring.