**W. R. WEAVER COMPANY, Appellant,**

v.

**BURROUGHS CORPORATION, Appellee.**

No. 6759.

Court of Civil Appeals of Texas, El Paso.

March 28, 1979.

Rehearing Denied April 18, 1979.

Ratliff, Haynes & Stading, Jack Ratliff, Robert A. Skipworth, El Paso, for appellant.

Studdard, Melby, Schwartz, Crowson & Parrish, Don Studdard, Harold E. Crowson, Jr., El Paso, for appellee.

## OPINION

WARD, Justice.

This is an appeal from a summary judgment awarded to the Defendant. The Plaintiff, W. R. Weaver Company, leased accounting equipment and purchased the accompanying programs from the Defendant, Burroughs Corporation, and, becoming dissatisfied with the performance of the equipment and the programs, sued for alleged consequential damages suffered on theories of breach of express and implied warranties and on strict liability. Presented on this appeal are questions as to whether the statute of limitations barred the claim and whether certain exclusionary clauses as to warranties and consequential damages contained in the contracts relieved the Burroughs Corporation of any liability for warranties or for the consequential damages. We will reverse and remand.

This summary judgment was rendered before Rule 166–A, Tex.R.Civ.P., was amended on January 1, 1978. The summary judgment proof shows that the Defendant, Burroughs Corporation, leased an L7000 computer to the Plaintiff, W. R. Weaver Company, by lease agreement dated November 1, 1971, the machine being designed to perform certain accounting procedures. At the same time, Burroughs, by a separate contract in writing which was dated November 2, 1971, agreed to provide and to sell to Weaver the programs or software which would be used in the machine to perform Weaver's automated sales accounting, finished goods inventory control, payroll and related reports, accounts receivable with aging, and accounts payable. All of the programs with the exception of the last had as their anticipated delivery schedule the date that the L7000 machine was delivered to Weaver. As to the accounts payable program, the anticipated delivery schedule was 180 days after delivery of the machine.

Among the terms and conditions of the contract regarding the sale of the software was the following provision: "Burroughs believes the programming being furnished hereunder is accurate and reliable and when programming accomplishes initially agreed-upon results, such programming will be considered completed."

Because Weaver insisted that some assurance regarding the system be given, Burroughs, in addition to the lease agreement and the sales contract, executed and delivered to Weaver the following document:

## STATEMENT OF INSTALLATION CONDITIONS BURROUGHS L7000 ACCOUNTING SYSTEM FOR W. R. WEAVER CO., EL PASO, TEXAS

Burroughs Corporation will, as provided in the cost of software programming, include the services of our district systems analyst to completely define your accounting needs and design a working system to meet your specific requirements. You will also receive the complete support of our local force in training your staff, both prior to and after completion of the installation.

Burroughs Corporation further agrees that software, as listed in addendum for application software support, will be operable prior to installation.

The L7000 was delivered to Weaver in February, 1972 and, according to the summary judgment proof offered by the nonmoving Plaintiff, Weaver started using the equipment with the payroll program. According to the affidavit of Ron Colwell, a former employee of Burroughs, the system was slow in starting up, and by August, 1972, the only operational program that was then functioning was still the payroll program. About October, 1972, this employee and Mr. Hicks, the Accounting Manager for Weaver, started to operate the automatic sales accounting program, but it was not until 1973 that that program was actually able to be operated by the regular accounting employees of Weaver. Because the other programs had not been implemented, neither Colwell nor Hicks knew of any problems that Weaver would encounter from the other programs until they were actually put in use by the operators in 1973. Colwell remembered that Burroughs was always on

his back to get something done about the machines so that Weaver would pay for them.

According to two of Weaver's clerks who operated the machine, it was not until 1973 that the account receivables program was delivered and put into operation, and as to that operation the agency function never worked properly; that the finished goods inventory control program was slow and cumbersome and did not work properly; the automatic sales accounting program was slow and caused overtime; and the accounts payable program was never received from Burroughs.

As previously pointed out, the original agreement was that all accounting programs, with the exception of the accounts payable, would be operable at the time of installation; that through all of 1972, only the payroll program was in normal operation. On April 11, 1972, the Accounting Manager for Weaver notified Burroughs that Weaver would refuse to make payments because of lack of delivery, and thereafter Weaver made no payments on the contracts until the end of 1972. At that time, the parties apparently attempted to arrive at a solution to the difficulties that had arisen, though the exact dates and the exact nature of the agreements made between them are not entirely clear from the proof, and as later pointed out all this matter can be considered as being partially in dispute. At that time, Burroughs contacted Weaver and, as a result, Burroughs sold the L7000 to Funding Systems Leasing pursuant to a purchase order dated December 10, 1972, and Weaver in turn entered into a lease with Funding Systems and started making lease payments to that organization. Its first check to that organization was dated December 8, 1972. During that period, Burroughs cancelled all lease rentals owed by Weaver from the time of the delivery of the equipment up until the end of 1972.

Sometime later, Weaver discontinued the use of the equipment and the programs, and filed the present suit on December 21, 1976, alleging therein a breach of an express war-

ranty and implied warranties of fitness and merchantability, claiming also a recovery on the theory of strict liability because of defective design. The damages alleged are those of an incidental and consequential nature, it being finally claimed that the Plaintiff was entitled to treble its recovery and to reasonable attorney's fees by virtue of the Texas Deceptive Trade Practices—Consumer Protection Act, Article 17.50, Tex.Bus. & Comm.Code Ann. (Supp.1978–1979). The Defendant answered pleading, among other things, the statute of limitations, express waivers of all implied warranties, as well as waivers and exclusions of the claimed damages. Thereafter, Burroughs filed its motion for summary judgment setting forth six separate grounds, and the trial Court, in granting the motion, stated that the judgment was granted upon each and every ground made in the motion for summary judgment.

The sole point presented on appeal is the general one that the trial Court erred in granting the motion for summary judgment. Under the point, each of the grounds urged by Burroughs and sustained by the Court below are attacked and covered. The question on appeal, as well as in the trial Court, is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the Plaintiff's cause of action. We note further that, since the judgment was entered previous to 1978 under the rule then in force opinion testimony would not support a summary judgment. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex. 1970).

■ The first two grounds in the motion for summary judgment were that the four-year statute of limitations barred both the claim on the lease of the L7000 computer and any claim on the sale of the software. Burroughs separated the two transactions, and on the equipment lease agreement argued that the four-year statute of limitations, Article 5527, Tex.Rev.Civ.Stat.Ann. (1958), controls, and it began to run from the date the contract was breached. It

argues that the summary judgment proof established that at the very latest a breach occurred when a repudiation of the sales contract was made by Weaver, and this was done when Weaver agreed to cancel the lease contract and to thereafter deal with Funding Systems Leasing. If it be accepted that the breach of the lease agreement occurred when Weaver agreed to cancel the lease contract, the problem presented is that the summary judgment movant has not established with any definiteness the date the cancellation of the Burroughs lease was made by Weaver, there being some evidence of record that the cancellation, if any, was not completely effective until January, 1973. We hold that Burroughs has not sustained its burden to show the absence of any fact issue in this regard.

■ As to the software sale, the parties agree that Section 2.725, Tex.Bus. & Comm. Code Ann. (Tex. UCC 1968), is applicable and that any action for breach of the contract of sale had to be commenced within four years after the cause of action accrued. Subsection (b) is to the effect that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach, and a breach of warranty occurs when tender of delivery is made. The parties agree that all of the executed instruments must be read together to arrive at the meaning of the contract. *H. G. Brelsford & Associates v. Bankston Rentals, Inc.*, 573 S.W.2d 604 (Tex.Civ.App. —Eastland 1978, no writ). They differ as to the intention expressed by the documents. Thus, Burroughs argues that the sales contract is explicit in stating the dates when the programs will be delivered. Burroughs concludes that since the evidence shows that Weaver did not get operable programs upon the delivery of the machine in February, 1972, then that is the date of the breach and the date the statute of limitations started to run on the sales contract.

Weaver takes the position that Burroughs was not bound by the specified delivery dates as the terminology of the sales contract refers only to an anticipated delivery schedule, and further states that the delivery and installation would be made as promptly as was reasonably possible. The proof reflects that only two of the programs were delivered in 1972. At least a fact issue has been presented which must be resolved by the trier of the facts.

We do not reach the question of whether or not under the contracts there existed a warranty explicitly extending to future performance of the goods where the cause of action would accrue only when the breach was or should have been discovered. Section 2.725(b), Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968).

Burroughs next argues that any cause of action based upon tort has been barred by the two-year statute of limitations and that no recovery for economic loss based on strict liability under products liability law can be allowed. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). Weaver concedes on these matters and they will no longer exist in the case.

■ Burroughs also seems to assert that the two-year statute of limitations is applicable to any breach of implied warranty. That argument is overruled. A warranty that the law implies from the existence of a written contract is as much a part of the writing as the express terms of the contract and the action is governed by the four-year statute of limitations. *Certain-Teed Products Corporation v. Bell*, 422 S.W.2d 719 (Tex.1968). Also, if the contract be one as to a sale of goods, whether it be oral or written, Section 2.725 Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), applies. *Ideal Builders Hardware Company v. Cross Construction Co., Inc.*, 491 S.W.2d 228 (Tex. Civ.App.—Houston [1st Dist.] 1972, no writ).

■ The next point urged by Burroughs is that the written contract between the parties specifically excluded any warranty, express or implied, of merchantability and of fitness for a particular purpose as lessor in the lease agreement or seller in the equipment sales contract, and thus as a matter of law no such warranties exist.

The equipment sale contract by which the programs were sold warranted them to be free from defects in material and workmanship, and Burroughs agreed to exchange defective parts during a period of one year from delivery. A separate paragraph excluded all other warranties, was all capitalized and was as follows: "THERE ARE NO UNDERSTANDINGS, AGREEMENTS, REPRESENTATIONS, OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY REGARDING THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), NOT SPECIFIED HEREIN, RESPECTING THIS CONTRACT OR EQUIPMENT HEREUNDER. THIS CONTRACT STATES THE ENTIRE OBLIGATION OF SELLER IN CONNECTION WITH THIS TRANSACTION." Substantially the same provisions were in the lease agreement except that the quoted paragraph was not in capital letters but was set out as a separate paragraph in the lease.

■ Contrary to the argument made by Weaver, we hold that the disclaimer of implied and express warranties contained in the equipment sales contract complies with Section 1.201(10), Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), and is conspicuous. Further, the contract is in compliance with Section 2.316(b), Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), and does exclude the implied warranty of merchantability since the writing mentions merchantability and is conspicuous. Further, it excludes the implied warranty of fitness since the exclusion is in writing and is conspicuous. These exact provisions have been construed and held valid and effective against similar attacks in *Westfield Chemical Corp. v. Burroughs Corp.*, 21 UCC Rep. 1293 (Mass. 1977); *Bakal v. Burroughs Corporation*, 74 Misc.2d 202, 343 N.Y.S.2d 541 (1972); *Investors Premium Corporation v. Burroughs Corporation*, 389 F.Supp. 39 (D.S.C.1974).

The paragraph in the lease agreement is not in capital letters. The conspicuous requirement does not apply to the lease agreement as it does not fall within Chapter 2 of the Tex.Bus. & Comm.Code Ann.

(Tex. UCC 1968) on sales. Regardless, there is nothing hidden about the paragraph, and it is so written that a person against whom it would operate should have noticed it, particularly since this is a commercial transaction.

■ While the above would effectively dispose of the case if the only documents were the equipment sales contract and the lease agreement, those do not constitute the entire contract. There is also the statement of installation conditions which in effect states that the systems analysis of Burroughs will completely define Weaver's accounting needs and will design a working system to meet Weaver's specific requirements. According to the summary judgment proof offered by Weaver, an express warranty was given within the terms of Section 2.313, Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), in the form of an affirmation of fact or promise. At this stage, at least, the inconsistent language of the instruments, creating an express warranty while at the same time disclaiming the warranty, creates a question of fact as to the intention of the parties and prohibits the summary judgment insofar as the judgment might have been based upon any disclaimer of warranties. *H. G. Brelsford & Associates v. Bankston Rentals, Inc.*, supra.

In this connection, we point out that this court has previously held that an express warranty by sample made by the showing of a model mobile home to a buyer survived an "as is" agreement and disclaimer in the sales contract. *Bowen v. Young*, 507 S.W.2d 600 (Tex.Civ.App.—El Paso 1974, no writ). Weintraub, in his article *Disclaimer of Warranties and Limitation of Damages for Breach of Warranty Under the UCC*, 53 Tex.L.Rev. 60 (1974) at 70, discusses the problem and states that if there is any ambiguity concerning the combined effect of an expressed warranty and a warranty exclusion, the doubt will be resolved in favor of the express warranty.

The final ground made by Burroughs in its motion for summary judgment was that the contract precluded Weaver from recovering any incidental or consequential dam-

ages since the lease and sales agreement provide that Weaver expressly waives all damages, whether direct, incidental or consequential, as they provide that Burroughs shall not be held liable under the agreements for any more than exchange of equipment under the express warranty. The three *Burroughs* cases previously cited recognize that this limitation of damages is authorized by Section 2.719, Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968); that such agreements are common in commercial transactions between businessmen acting at presumed arm's length; and that there is nothing unconscionable about them.

Again, Burroughs is asking that we ignore the express warranty language previously discussed and before the trier of the facts has determined what the ambiguous terms of the contract between the parties were, and whether under all of the circumstances the exclusive or limited remedy has failed of its essential purpose. Section 2.719(b), Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968). Burroughs further points out that nowhere has Weaver pled that the exclusive or limited remedy has failed in its essential purpose nor that it is unconscionable. That Weaver's pleadings may be defective in raising defenses to the imposition of the limitation of remedies does not permit the granting of the summary judgment. If the affidavits or other summary judgment evidence disclose facts which render the position of the moving party untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party. *Womack v. Allstate Insurance Company*, 156 Tex. 467, 296 S.W.2d 233 at 237 (1956).

For the reasons stated, judgment of the trial court granting the motion for summary judgment is reversed and the cause is remanded for trial.