**G–W–L, INC. d/b/a Goldstar Builders**

v.

**John R. ROBICHAUX et ux.**

No. C–837.

Supreme Court of Texas.

Dec. 31, 1982.

John L. Fulbright, Beaumont, for petitioner.

Robert P. Walker, Port Arthur, for respondents.

SONDOCK, Justice.

This is a suit brought under the Texas Deceptive Trade Practices Act by John and Merila Robichaux because of alleged defects in a new house purchased from builder-vendor G–W–L, Inc. d/b/a Goldstar Builders ("Goldstar"). The trial court rendered judgment for the Robichaux after a jury trial. The court of appeals affirmed. 622 S.W.2d 461. We reverse the judgments of the courts below and render judgment that plaintiff take nothing.

The Robichaux contracted with Goldstar for the construction of a house. The contract provided that Goldstar would design, build, and provide the materials for the house. The construction was completed by Goldstar but the roof of the house had a substantial sag in it. The Robichaux sued for breach of express and implied warranties. The jury found that no express warranties were breached, but found that Goldstar had failed to construct the roof in a good workmanlike manner and that the house was not merchantable at the time of completion. Judgment was rendered awarding the Robichaux damages under the

Deceptive Trade Practices Act, plus attorney fees.

Goldstar's first point of error is that the court of appeals erred in holding that the implied warranty of fitness created by *Humber v. Morton*, 426 S.W.2d 554 (Tex. 1968) was not waived because the parties agreed that there were no express or implied warranties. The promissory note signed by the Robichaux contained this provision:

This note, the aforesaid Mechanic's and Materialmen's Lien Contract and the plans and specification signed for identification by the parties hereto constitute the entire agreement between the parties hereto with reference to the erection of said improvements, there being no oral agreements, representations, conditions, warranties, express or implied, in addition to said written instruments.

In *Humber v. Morton, supra,* this Court held that a builder-vendor who built and conveyed a house impliedly warranted that the house was constructed in a good workmanlike manner and was suitable for human habitation. Both parties acknowledge that the *Humber* warranty applies to real estate transactions of this nature. Additionally, both parties agree that this implied warranty can be waived by proper language. The question presented, therefore, is what is sufficient to exclude the implied warranty of fitness created in *Humber v. Morton, supra.* This question was reserved in *Watel v. Richman,* 576 S.W.2d 779 (Tex. 1978), and has not been addressed by this Court.

The court of appeals stated that the language waiving the implied warranty must be "clear and free from doubt." 622 S.W.2d 464. We agree. This standard is consistent with the better-reasoned decisions in other states addressing the exclusion of the implied warranty of habitability. *See Sloat v. Matheny,* 625 P.2d 1031 (Colo. 1981); *Belt v. Spencer,* 585 P.2d 922 (Colo. Ct.App.1978); *Rapallo So. Inc. v. Jack Taylor Dev. Corp.,* 375 So.2d 587 (Fla.Dist.Ct. App.1979); *Arnold v. New City Condominiums Corp.,* 78 A.D.2d 882, 433 N.Y.S.2d 196, *appeal dism'd* 53 N.Y.2d 823, 422 N.E.2d 583, 439 N.Y.S.2d 922 (1980); *Griffin v. Wheeler Leonard & Co.,* 290 N.C. 185, 225 S.E.2d 557 (1976).

The court of appeals held, however, that the language of disclaimer in this case did not meet that test. With this we do not agree. The language in the contract that states "no . . . warranties, express or implied, in addition to said written instruments" could not be clearer. The parties to a contract have an obligation to protect themselves by reading what they sign. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex. 1962). Unless there is some basis for finding fraud, either actual or constructive, the parties may not excuse themselves from the consequences of failing to meet that obligation. *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1957); *Indemnity Insurance Co. v. N. America v. W.L. Macatee & Sons,* 129 Tex. 166, 101 S.W.2d 553 (1936).

Although this is a question of first impression, we do not write on an entirely clean slate. In *Pyle v. Eastern Seed Co.,* 198 S.W.2d 562, 563 (Tex.1946), this Court faced a similar question. In the *Pyle* case, a seed buyer sued the seed company for breach of warranty when the seed delivered was not the variety provided for in the contract. The seed company argued that the contract contained a waiver of all warranties because the contract provided that "Eastern Seed Co. gives no warranty, express or implied, as to description, purity, productivity, or any other matter of any seed we may send out. . . ." *Id.* at 563. In holding that the buyer could not recover for breach of warranty, this Court stated:

Neither of the parties here are under guardianship or incompetent to contract. There is no claim that the contract signed was not the one agreed upon, or that both parties did not fully understand what they were agreeing to. Plaintiff [seed seller] plainly undertook to relieve itself from liability in case of intermixture, and defendant agreed that it should be relieved. It is not claimed that the contract is void, because contrary to public law or

to public policy, and, if not, effect should be given to it. . . . If it be conceded that the contract is one-sided, it must also be conceded that the parties had a right to make a one-sided contract if they saw fit. *See also Allright, Inc. v. Elledge,* 515 S.W.2d 266 (Tex.1974) (limitation of liability in bailee's written parking contract need not be called to consumer/bailor's attention); *W.R. Weaver Co. v. Burroughs Corp.,* 580 S.W.2d 76 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.) (disclaimer in an equipment lease agreement need not meet the conspicuousness requirement of Tex.Bus. & Com.Code Ann. § 2.316).

The Robichaux cite *MacDonald v. Mobley,* 555 S.W.2d 916 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.), for the proposition that the provisions in the Texas Business and Commerce Code for exclusions or modifications of warranties should be applicable to the implied warranty of fitness created in *Humber v. Morton, supra. See* Tex.Bus. & Com.Code Ann. § 2.316 (1968). In *MacDonald v. Mobley, supra,* the builder-vendor defended on the grounds that the sales contract excluded the *Humber* warranty pursuant to § 2.316 of the Business and Commerce Code. The court of appeals agreed that the provisions of § 2.316 were applicable, but held that the language used was not effective to exclude the warranty of fitness because it was not "conspicuous," as required by § 2.316(b). *Id.* at 919.

■ The provisions of Chapter 2 (Sales) of the Business and Commerce Code are not applicable to the construction and sale of a house. The Legislature thus far has not included real estate transactions within the scope of Chapter 2. Chapter 2 is limited to transactions involving the sale of "goods." Tex.Bus. & Com.Code Ann. § 2.102 (1968). Goods are defined as "all things . . . that are *movable* . . . at the time of identification to the contract. . . ." Tex.Bus. & Com. Code Ann. § 2.105 (1968). The Code additionally makes it clear that the sale of a home is not normally "movable." Section 2.107 provides that "a contract for the sale of . . . a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller."

■ Additionally, building contracts involve the sale of both services and materials. In such hybrid transactions, the question becomes whether the dominant factor or "essence" of the transaction is the sale of the materials or the services. *See Freeman v. Shannon,* 560 S.W.2d 732 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). The contract in this case provided that Goldstar would "build, construct, and complete . . . and furnish and provide all labor and material to be used in the construction and erection thereof." Clearly, the "essence" or "dominant" factor of the transaction was the furnishing of labor and the performance of work required for constructing the house. *See Robertson Lumber Co. v. Stephens Farmers Co-op Elevator,* 274 Minn. 17, 143 N.W.2d 622 (1966); *Markman v. Hefner,* 252 Iowa 118, 106 N.W.2d 59 (1960).

■ Goldstar's second point of error complains that the court of appeals erred in holding that the implied warranty of merchantability could be applied to this transaction. Since we conclude that Chapter 2 of the Business and Commerce Code is not applicable to this real estate transaction, we hold that the trial court and court of appeals erred in applying the implied warranty of merchantability contained therein.

The judgments of the courts below are reversed and judgment is rendered that plaintiff take nothing.

SPEARS, J., dissents with an opinion in which RAY and ROBERTSON, JJ., join.

SPEARS, Justice, dissenting.

I respectfully dissent.

I do not agree with the majority that the language "no warranties, express or implied" is sufficient to exclude the builder's implied warranty of fitness. The better rule is the waiver must be in *clear and unequivocal* language specifically naming the warranty that is being disclaimed. *See Sloat v. Matheny,* 625 P.2d 1031 (Colo.1981); *Herlihy v. Dunbar Builders Corp.,* 92 Ill.

App.3d 310, 47 Ill.Dec. 911, 415 N.E.2d 1224 (1980).

In analogous areas of contract law this court has held clauses ineffective if not clear and specific, and I see no reason not to apply that same rule here. For example, in order for an indemnity agreement to protect an indemnitee from its own negligence the obligation must be expressed in clear and unequivocal terms. *Eastman Kodak v. Exxon Corp.,* 603 S.W.2d 208 (Tex.1980); *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818 (Tex.1972). Similarly, in *McMillan v. Klingensmith,* 467 S.W.2d 193 (Tex.1972), we held unless a party is expressly named in a release, he is not released.

The warranty of habitability is implied in law to protect innocent consumers, and to hold builders accountable for their work. To effectuate the public policies underlying the implied warranty, a court should not consider the warranty waived except by very express and specific language which clearly reflects that the buyer knew the implied warranty did not attach to the sale of his home.

In the sale of a new home, the builder warrants that the house is constructed in a good and workmanlike manner, and is suitable for human habitation. *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968). An effective waiver must give the buyer notice that he is waiving his warranty of habitability. The ordinary consumer when signing a contract for sale would not even conceive of the possibility that his house would not be built in a good and workmanlike manner. For that reason the waiver must at least be specific and express enough to inform the buyer specifically what he is waiving. An effective waiver of the implied warranty of fitness in the sale of a new home should refer to a warranty of "habitability" or disclaim "good and workmanlike manner." In this case the language "no warranties express or implied" is not sufficient to notify the purchaser that he is waiving his implied warrant of habitability.

Other states have various requirements for effectively waiving the implied warranty of habitability. I believe the better reasoned authorities are those that at least require specific and express language. *E.g., Sloat v. Matheny,* 625 P.2d 1031, 1034 (Colo.1981); *Peterson v. Hubschman Construction Co.,* 76 Ill.2d 31, 27 Ill.Dec. 746, 748, 389 N.E.2d 1154, 1156 (1979); *Crowder v. Vandendale,* 564 S.W.2d 879, 881 (Mo. 1978); *Casavant v. Campopiano,* 114 R.I. 24, 327 A.2d 831, 834 (1974).

I would, therefore, affirm the judgments of the court's below.

RAY and ROBERTSON, JJ., join in this dissenting opinion.