CONCURRING OPINION



No. 04-99-00337-CV



Michael M. BUECHER, et al,


Appellants



v.



CENTEX HOMES, et al,


Appellees



From the 224th Judicial District Court, Bexar County, Texas


Trial Court No. 97-CI-12270


Honorable Carol R. Haberman, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice

Concurring Opinion by: Paul W. Green, Justice

Dissenting Opinion by: Sarah B. Duncan, Justice (joined by Justice Karen Angelini)


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Alma L. López, Justice

 Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

 

Delivered and Filed: March 31, 2000


 The question is whether a consumer may contract away the implied warranties of
habitability and good and workmanlike performance in the construction of a new home. The
majority says such warranties cannot be waived or disclaimed, relying on Melody Home Mfg.
Co. v. Barnes, 741 S.W.2d 349 (Tex. 1987). I must reluctantly concur.

 The identical question was presented to the supreme court in G-W-L, Inc. v.
Robichaux, 643 S.W.2d 392 (Tex. 1982). In that case, the court unanimously held that the
implied warranty of fitness created by Humber v. Morton, 426 S.W.2d 554 (Tex. 1968) could
be disclaimed by agreement. See Robichaux, 643 S.W.2d at 393. The court split, however,
over the quality of language that must be used to create an effective waiver. The majority
held the language must only be "clear and free from doubt." Id. The dissent argued that "the
better rule is the waiver must be in clear and unequivocal language specifically naming the
warranty that is being disclaimed." Id. at 394 (Spears, dissenting) (emphasis in original). In
this case, the purchasers agreed to accept the homeowner's warranty "in lieu of all other
warranties, whatsoever, whether expressed or implied by law, and including but not limited
to the implied warranties of good workmanlike construction and habitability." (emphasis
supplied). This language satisfies even the more rigorous test advocated by the dissent in
Robichaux.

 Five years after deciding Robichaux, the supreme court for the first time recognized
an implied warranty for services related to the repair or modification of existing tangible
goods or property. See Melody Home, 741 S.W.2d at 354. The court then went further and
held that this implied warranty could not be waived. Id. at 355.(1) Moreover, and of particular
importance in this case, the court suggested that Robichaux was inconsistent with its holding.
Id. ("To the extent that it conflicts with this opinion, we overrule [Robichaux].").

 Thus, on the basis of the rationale expressed in Melody Home, the majority disregards
Robichaux and holds that the Humber implied warranty for new home construction may not
be waived. Although I believe this is what the supreme court intended in Melody Home, I
believe the court was wrong to extend the non-waiver holding to implied warranties in new
homes. However, because I am bound to follow supreme court precedent, I must concur in
the result.

* * *


 I write separately because I believe Melody Home should be reconsidered, at least
with respect to its holding that new home implied warranties cannot be negotiated away by
the parties. The reason given for the anti-waiver holding in Melody Home was the supreme
court's concern that parties in unequal bargaining positions might be forced into accepting
warranty disclaimers on a "take it or leave it" basis. See Melody Home, 741 S.W.2d at 355.
That may be a legitimate concern where the service provider is in a superior bargaining
position to the consumer. In Melody Home, for example, the consumer was essentially in a
captive position-he purchased what was represented as a habitable mobile home and, when
there were problems, he expected the manufacturer to repair the defects in a good and
workmanlike manner. Although there was no disclaimer of warranty in that case, the supreme
court nonetheless determined that any attempted disclaimer would have been unenforceable
because the consumer, without any effective means to negotiate with the manufacturer,
would have had little choice but to accept the terms of the repair service provided. Id.

 But where the parties are in an equal bargaining position, there is no legitimate reason
why the parties should not be allowed to freely negotiate the existence or the scope of the
warranties of habitability and good and workmanlike performance. As noted above, this
principle was not even questioned by the court in Robichaux. 643 S.W.2d at 393. In
Robichaux, a new-home purchaser sued the seller-builder for alleged defects in the house.
The purchaser had agreed to waive the implied warranties in the sales contract, but he argued
that the waiver language was inadequate to be effective. The supreme court held the waiver
language in the contract was enforceable, reiterating the long-held rule that "[t]he parties to
a contract have an obligation to protect themselves by reading what they sign." Id. The
implication is that the court considered the parties to have been on an equal footing in their
ability to negotiate the terms of their home purchase contract.

 Every day throughout the state, home buyers negotiate with home sellers over the
terms of the transaction. As it happens, some consumers are better negotiators than others.
But they all share the position of greatest strength in the transaction-the ability to walk away
from a deal they do not like. Unlike the mobile home owner in Melody Home who was, as
a practical matter, forced to look to the manufacturer to repair defects in his home, a
prospective new-home purchaser is not forced by circumstances or any other reason to buy
a home under a contract that waives the implied warranties. To the extent the majority
considers such a transaction to be a contract of adhesion, I must respectfully disagree.

 Melody Home, in the course of making a good point, went much too far by broadly
condemning any attempt by the parties to a new-home sale to freely negotiate an agreement
that substitutes contractual warranty provisions for the legally implied warranty. The better
and more practical solution seems to be that which was expressed by the supreme court in
Robichaux-simply make sure that the disclaimer of implied warranties is made known to the
consumer in language that is "clear and free from doubt," or "clear and unequivocal," or
however the court chooses to express the degree of notice that must be given to the
consumer.

 Centex Homes argues, quite rightly, that Robichaux should control this case. And
while I may agree with the reasons given, the fact remains that Robichaux was overruled by
Melody Home. Accordingly, I am constrained to follow what I believe is an ill-considered
extension of the Melody Home non-waiver holding to new home sales. Perhaps this case will
provide a means for the supreme court to reexamine the scope of Melody Home and,
hopefully, reestablish the more reasonable approach to the issue articulated in Robichaux.



 PAUL W. GREEN

 Justice

PUBLISH


1. Parenthetically, it should be noted that the anti-waiver holding of Melody Home has nothing to do with the
facts of that case and is only dicta. No attempted waiver of implied warranties was involved. Moreover, the question
of whether a consumer could waive an implied warranty of habitability or good and workmanlike repair was never
raised by the parties. See 741 S.W.2d at 356 n 1 (Gonzalez, concurring). The issue before the court was purely whether
the homebuilder/repairer had breached the Humber implied warranty of habitability, and whether a service provider
was liable for breach of an implied warranty to render repair services in a good and workmanlike manner. Id.
Notwithstanding that the anti-waiver holding is dicta, it is difficult to ignore the fact that the court specifically
overruled Robichaux. Id. at 355.