**NL WELL SERVICE/NL INDUSTRIES, INC. and Ron Hall, Appellants,**

v.

**FLAKE INDUSTRIAL SERVICES, INC., Appellee.**

**No. 2–82–147–CV.**

Court of Appeals of Texas, Fort Worth.

June 30, 1983.

James A. Moseley, Odessa, for appellants.

Lonny D. Morrison, Wichita Falls, for appellee.

Before HUGHES, JORDAN and BURDOCK, JJ.

OPINION

HUGHES, Justice.

NL Well Service/NL Industries, Inc. and Ron Hall have appealed a judgment in favor of Flake Industrial Services, Inc. awarding $9,755.85 as liquidated damages under a contract, $2,344.81 prejudgment interest and attorney's fees.

We reverse and render in part and reverse and remand in part.

On January 8, 1980 NL Well Service/NL Industries, Inc. and Ron Hall entered into a garment rental contract with Flake Industrial Services, Inc. Flake agreed to furnish industrial uniforms to appellants for a minimum period of 104 weeks for a specified weekly rental charge. The rental charge was based upon a set number of employees and the contract provided that in the event of a reduction of NL's work force, the rental charge would be reduced accordingly, but never less than 50% of the total weekly rental charge. The contract also contained a liquidated damage clause providing for damages equivalent to 85% of the rental charges from date of termination until the end of the contract period.

In February 1981 appellants terminated the agreement with Flake, and in April 1981 Flake filed suit to recover past due charges and liquidated damages. Appellants counterclaimed alleging fraud, breach of warranty, and violations of the Texas Deceptive Trade Practices Act.

Appellants allege ten points of error in their appeal, but, due to our disposition of the case, we find it necessary to address only four of the points. The first point we address is point of error two wherein appellants aver that the trial court erred in rendering judgment based on the liquidated damages formula because there is no evidence or, alternatively, insufficient evidence to support the findings.

The liquidated damage clause that Flake is relying on reads as follows:

D. Inasmuch as the breach of this Agreement by Customer will cause a serious and substantial damage to Supplier,

and because it will be difficult if not impossible to prove the amount of such damage, Customer agrees that in case of breach of this Agreement by failure to pay Supplier as agreed, it will pay to Supplier within ten (10) days after the date of termination all accrued charges for garment rentals incurred prior to the date of termination together with an additional amount of money equal to eighty-five percent (85%) of the Rental Charges which Customer would have been obligated to pay Supplier for garment rental from the date of termination until the end of the existing Contract Period as liquidated damages; such sum being agreed upon by the Supplier and by the Customer as the amount which Supplier will be damaged by breach of this Agreement on the part of Customer if such Agreement is terminated by virtue thereof.

In order for Flake to recover under this clause there must be some proof of what the rental charges, which appellants would have been obligated to pay from the date of termination until the end of the contract period, would have been. The only testimony on this point was supplied by Leon Flake and reads as follows:

Q. In this suit, there is an allegation that 85% of the rental charges, which NL would have been obligated to pay due to the termination would be $9,755.85. Have you verified the accuracy of that amount?

A. Yes.

Q. And, is that, in fact, the amount of liquidated claim, $9,755.85?

A. That represents 85% of the total.

\* \* \* \* \* \*

Q. You indicated that the amount you considered to be owing on the 85% figure was this $9,755.85.

A. That is correct.

Q. How did you figure that?

A. 85% of the overall balance owed.

Q. Where were the figures on overall balance? Where does that come from?

A. I don't have those in my mind. It's 15% more than that. I have got all of the paper work here, if you would like to go through it.

Q. Do you have the paper work here?

A. Laying over on the desk.

Q. Is your testimony based upon those records?

A. On documented records, correct.

The documented records mentioned were never introduced into evidence. They are considered hearsay because they are an out-of-court statement offered to prove the truth of the matter asserted. Flake admits that his testimony is based on hearsay; therefore it cannot support the judgment.

■ There was no objection to the testimony, but under our present rules of evidence, hearsay has no probative value, even if admitted without objection. It can never form the basis of a judgment because it is wholly incompetent. *Durant Chevrolet Co. v. Industrial, etc.,* 624 S.W.2d 628 (Tex.App.—Fort Worth 1981, no writ).

■ Flake's statement that he verified the accuracy of the amount does not automatically mean that the information was within his personal knowledge. He still admits basing his testimony on documented records that were never introduced into evidence. There was also no need to discredit or impeach testimony that was incompetent.

■ Without the hearsay testimony, there is no evidence to show the amount left on the contract. Appellants' second point of error is sustained.

We next address appellants' point of error eight which states that the trial court erred in refusing to admit evidence pertaining to appellants' counterclaim for breach of warranty and Deceptive Trade Practices Act violations. The contract in question here contains a waiver clause which reads as follows:

In the event Customer at anytime considers that the Supplier's performance hereunder is not in compliance with the provisions of this Agreement, Customer shall notify Supplier, in writing, setting

forth specifically the factual basis for such conclusion and Supplier, if in default, shall have ten (10) days after receipt of such written notice specifying such deficiencies in which to commence compliance with the obligations that are: (a) imposed by virtue of this Agreement and (b) covered by such notice. Customer agrees that such notification shall be made in writing on or before ten (10) days from the date of such alleged breach and the failure of the Customer to timely specify any alleged breach, in writing, as herein provided, shall excuse and waive the same and shall not thereafter be asserted as a claim, defense, offset or counterclaim in any legal action arising under this Agreement.

Flake filed a motion in limine to have any evidence of breach on the part of Flake excluded because there was no evidence that NL Well had met the notice requirement. The trial judge granted the motion excluding evidence on appellants' counterclaims for breach of warranty and Deceptive Trade Practices violations and appellants' tendered the evidence in a bill of exception.

██ At the time the parties entered into this contract, Tex.Bus. & Com.Code Ann. § 17.42 (Vernon Supp.1982) provided that "Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; . . ." Although a contractual waiver may be effective in a breach of contract action, under this section of the Deceptive Trade Practices Act, it is ineffective in an action for deceptive trade practices. The counterclaims filed by NL and Hall are based on breach of warranty and violations of the Deceptive Trade Practices Act and the excluded evidence was relevant to these causes of action. The waiver of these actions is void under § 17.42, and the court erred in excluding the evidence.

Flake's only argument in reply is that appellants failed to raise the issue in the trial court so they should be prevented from raising it on appeal. The issue of waiver was before the trial court and although NL and Hall did not make this specific argument below, the trial court did have an opportunity to rule on the issue of waiver. The eighth point of error is sustained.

██ Appellants' ninth point of error complains that the trial court erred in refusing to submit their defensive issues, definitions and instructions concerning the counterclaim on unconscionability. The point is multifarious and too general to be entitled to our consideration. The issue, as worded, overlooks the possibility that some of the issues or instructions should have been submitted and others should not have been submitted. The issues should have been designated separately. The point of error is overruled.

██ Appellants' tenth point of error deals with the issue of prejudgment interest. In light of our ruling on point of error two wherein we held there was no evidence to support the award of damages, the issue of prejudgment interest becomes moot. The point of error is overruled.

We reverse the judgment of the trial court with regard to Flake's claim for damages under the liquidated damage clause and render judgment that Flake take nothing. We reverse and remand the case for new trial on appellants' counterclaims.