**EPPLER, GUERIN & TURNER, INC., Appellant,**

v.

**PUROLATOR ARMORED, INC., Appellee.**

**No. 05–85–00332–CV.**

Court of Appeals of Texas, Dallas.

Nov. 20, 1985.

Duncan Boeckman, Beverly Brown, Golden, Potts, Boeckman & Wilson, Dallas, for appellant.

Clifton T. Hutchinson, Hughes & Luce, Dallas, for appellee.

Before AKIN, ALLEN and DEVANY, JJ.

AKIN, Justice.

This is an appeal from an order granting Purolator Armored, Inc.'s motion for summary judgment and dismissing this cause. In a single point of error, appellant Eppler, Guerin & Turner, Inc. contends that the trial court erred in ruling that a general contractual disclaimer of liability barred Eppler's claim under the Deceptive Trade Practices Act (the "DTPA"). We do not agree that the trial court erred in granting summary judgment and, consequently, affirm the trial court's judgment.

The facts relevant to the question on appeal are not in dispute. Eppler's suit is based on a claim for damages suffered as a result of Purolator's delay in the delivery of certain securities. This suit, as presented on appeal, is based solely on the allegation that Purolator violated the DTPA by representing that its delivery service had characteristics, uses, or benefits which it did not have. TEX.BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon Supp.1985). More specifically, Eppler argues that a Purolator delivery schedule dated August 1, 1982, and a telephone conversation between an Eppler employee and a Purolator employee constituted representations that the delivery in question would be made in strict accordance with the August, 1982 schedule. According to the August, 1982 Purolator schedule, shipments from Dallas, Texas to Newark, New Jersey are delivered in Newark between 11:00 a.m. and 5:00 p.m. of the first following business day. This lawsuit commenced when Purolator did not deliver the securities in question according to this schedule.

Purolator contends that a provision of a contract between it and Eppler disclaims any liability for untimely delivery of securities and that the contractual provision is the only representation between the

two parties regarding the timeliness of deliveries. Eppler contended at oral argument that the contract in question was not between Purolator Armored and Eppler, and that the contract, by its terms, applies only to shipments between the cities of Oklahoma City, Tulsa, Dallas, Fort Worth, and Austin. The affidavit of Melvin F. Hees, Divisional Vice President of Purolator Armored contains the following uncontroverted statements:

3. The agreement attached hereto and marked as Exhibit 'A' is a true and correct copy of the agreement between Purolator Security, Inc. and Eppler, Guerin & Turner, Inc. that was in effect at all times.

4. Purolator Security, Inc. is the predecessor corporation of Purolator Armored, Inc.

5. The shipment at issue ... was transported and delivered by Purolator Armored, Inc. under its agreement with Eppler, Guerin & Turner, Inc. ...

Thus, although the contract purports to be between "Purolator Security, Inc." and Eppler, the uncontroverted evidence establishes that Purolator Security was the predecessor corporation to Purolator Armored. In addition, various employees of Eppler have stated in their depositions that Eppler operated under a written contract with Purolator Armored and that Purolator changed its name from time to time. In light of this evidence, Eppler's argument that the contract is not between these two parties is not persuasive.

■ As to Eppler's contention that the contract covers only certain delivery routes, we note that Hees's affidavit, also uncontroverted as to these points, establishes that this shipment was transported under the agreement at issue. In addition, the contract itself expresses no limitation in delivery areas. The "limitation" arises only through attachment of "Exhibit A–1," a rate schedule, to the contract. We see no reason to infer, as a matter of law, that attachment of one rate schedule limits a contract otherwise general in its reach, especially when the contract expressly contemplates renegotiation of the rates set forth in that rate schedule. Consequently, in the absence of any controverting affidavits, the contract was shown conclusively to be the current agreement between these two parties regarding the transaction here at issue.

Pursuant to this written contract, dated May 1, 1979, Purolator has provided the service of delivering securities from Dallas, Texas to Newark, New Jersey for Eppler for several years. This contract provides in pertinent part:

14. PUROLATOR shall not be liable for any loss caused by or resulting from:

\* \* \* \* \* \*

f) Non-performance or delays.

One of Eppler's witnesses testified by deposition that Eppler entered into the 1979 contract almost exclusively for economic reasons. In fact, the contract itself states that the specific provisions therein are based on certain rates and charges. In other words, Eppler received a special rate for its deliveries in consideration for the express provision that Purolator made no representations regarding, and would incur no liability because of, the timeliness or delay of any delivery.

In determining the effect of the above disclaimer, we note that we have been cited to no part of the record which indicates: (1) that in any portion of the August, 1982 schedule Purolator guaranteed, warranted, or promised that its deliveries for Eppler would be made in strict compliance with the deadlines set out in the August, 1982 schedule; (2) that the August, 1982 schedule was anything other than a statement made to the public at large, that is, a general statement to all of its customers or potential customers as to its schedule; (3) that Eppler paid a special rate for the delivery in question, that is, a rate higher than that provided for by the 1979 contract; (4) that there were any representations made to Eppler by Purolator regarding the specific delivery in question; or (5) that the August, 1982 schedule was a bargained-for alteration of the 1979 contract between Eppler and Purolator. Consequently, no sum-

mary-judgment evidence is in the record to raise a fact issue as to the applicability of this clause in the contract.

■ Eppler contends that section 17.42 of the DTPA bars waiver of rights under that Act and therefore renders this contractual provision ineffective to preclude Purolator's liability under the DTPA. We cannot agree. Eppler's contention that a contractual limitation on liability cannot bar a claim under section 17.42 of the DTPA has been rejected by us in *Ellmer v. Delaware Mini-Computer Systems, Inc.*, 665 S.W.2d 158 (Tex.App.—Dallas 1983, no writ). Section 17.42 of the DTPA provides, in pertinent part:

"Any waiver by a consumer of the provisions of this subchapter is *contrary to public policy and is unenforceable and void....*" [Emphasis added.]

TEX.BUS. & COM.CODE ANN. § 17.42 (Vernon Supp.1985). In *Ellmer,* we concluded that a disclaimer is not rendered unenforceable by section 17.42 of the DTPA, citing *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex.1982). *Ellmer,* 665 S.W.2d at 161. We then held that summary judgment, on the basis of the disclaimer, was proper. In accordance with both *Robichaux* and *Ellmer,* we hold that a contractual disclaimer or limitation of liability may bar a claim under the DTPA. Because the disclaimer in this case specifically precludes any recovery against Purolator for delays in delivery, summary judgment was appropriate on that basis.

Eppler attempts to distinguish *Ellmer* on the basis that it was a U.C.C., article 2 sales case and *Robicheaux* on the basis that the parties there agreed that waiver was possible, thereby failing to present that issue to the court. These distinctions are not persuasive. While *Ellmer* did appear to rely, to some extent, on the language of the U.C.C., it in fact based its holding that an implied warranty may be waived by express contractual provisions, even under the DTPA, on *Robicheaux.* Thus, we see no reason to limit our holding in *Ellmer* to U.C.C. sales cases, or to ignore the authority of *Robicheaux* on this issue.

Nevertheless, Eppler contends that section 17.42 forbids any waiver of representations forming the basis of a cause of action under the DTPA, citing *Brown v. American Transfer & Storage Company,* 601 S.W.2d 931 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). But the supreme court never reached this issue in *American Transfer.* In addition, our decision in *Ellmer* permitting waiver of warranty is supported by the recent case of *McCrea v. Cubilla Condominium Corporation N.V.,* 685 S.W.2d 755, 758 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). *McCrea* applied both *Robicheaux* and *Ellmer* to uphold the validity of contractual waiver of the implied warranty of fitness. Consequently, we hold that *Ellmer* governs the present case and, for that reason, we hold that the trial court correctly granted summary judgment for Purolator.

■ Additionally, we hold that as a matter of law the only representation made to Eppler regarding timeliness of delivery was contained in the 1979 contract, which stated that Eppler would not be liable for any delays in deliveries. We so hold because the provision disclaiming liability for delays in the 1979 contract was bargained for by these specific parties, and a later and different representation made to other parties or to the public at large could not alter this bargained-for representation. To hold otherwise would mean that any provision in any contract could be altered merely because one of the parties to the contract makes a different representation to different parties. We may assume, without deciding, that Purolator had some sort of schedule for deliveries at the time the 1979 contract was entered into since that contract refers to a "route structure." A change in that schedule, also applicable to the general public, could not give rise to a change in the representation regarding liability for delays in the contract between these two parties. A bargained-for representation as to timeliness of delivery can-

not be so altered any more than a bargained-for representation regarding rate could be.[1]

For the reasons stated, the judgment of the trial court is affirmed. It is ordered that appellee Purolator Armored, Inc. recover its costs of this appeal from Eppler, Guerin & Turner, Inc. and Reliance Insurance Company, as surety on appellant's cost bond.

---

1. Our holding might have been different had there been any evidence that Eppler and Purolator made special contractual arrangements regarding the delivery in question by paying a higher rate for the delivery or that Purolator specifically guaranteed that this delivery would be made in Newark between 11:00 a.m. and 5:00 p.m. of the next business day.