**HIGH PLAINS NATURAL GAS COMPANY, Plaintiff–Appellant,**

v.

**WARREN PETROLEUM COMPANY, A DIVISION OF GULF OIL CORPORATION, Defendant–Appellee.**

No. 87–2466.

United States Court of Appeals, Tenth Circuit.

May 19, 1989.

Barry Bishop of Clark, Thomas, Winters & Newton, Austin, Tex. (James H. Russell, Jr. of Valdez, Russell, Read & Rivera, Santa Fe, N.M., with him on the briefs), for plaintiff-appellant.

Bradford C. Berge of Campbell & Black, P.A., Santa Fe, N.M., for defendant-appellee.

* The Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of

Before ANDERSON, BRORBY and O'CONNOR.*

BRORBY, Circuit Judge.

High Plains Natural Gas Company (High Plains), the buyer, filed suit for damages against Warren Petroleum Company (Warren), the seller, alleging Warren's failure to deliver marketable natural gas breached implied warranties of merchantability and fitness for a particular purpose and violated the Texas Deceptive Trade Practices Act (DTPA). Warren moved for summary judgment asserting the remedies sought by High Plains could not be awarded as a matter of law because the contract limits the remedies for breach of contract to rejection of the natural gas or termination of the contract. The trial court granted summary judgment in favor of Warren holding the contract's limitation of remedies provision precluded relief. High Plains appeals the order granting summary judgment. We agree with the trial court's disposition and AFFIRM.

High Plains asserts three errors for our review: (1) High Plains is entitled to pursue its claim for breach of implied warranty as the limitation of remedies provision does not modify the implied warranties; (2) the limitations of remedies clauses in the contract do not prohibit High Plains from pursuing its remedies under the DTPA; and (3) Warren breached its implied duty of good faith and fair dealing.

The material facts are undisputed. High Plains operates a natural gas distribution system in northern Texas, buying gas and selling it to various commercial and residential customers. Warren operates a gas gathering system and extraction facility, buying gas from various producers, transporting the gas to its plant, extracting from the natural gas various hydrocarbon products such as butane and pentane, and selling the "residue gas," in this case to High Plains. Warren's gas gathering system operates on a vacuum principle which

Kansas, sitting by designation.

sucks the natural gas through its gas gathering system to its plant. When leaks occur in the lines, gas does not escape, rather outside air is sucked into the line. As more air enters the line the heating content of the gas is reduced. As various hydrocarbon products are extracted from the natural gas, again the heating content of the gas is reduced. The heating content or quality of the residue gas fluctuates depending upon the condition of Warren's system and of the amount of hydrocarbons extracted.

High Plains and Warren first entered into a contract in 1964 whereby High Plains agreed to buy, and Warren agreed to sell, the residue gas from Warren's McLean Plant. In 1981, High Plains filed suit against Warren complaining of the quality of the residue gas it was receiving. This suit was compromised and settled in 1983. The settlement included amendments to the contract and the payment by Warren of a significant sum of money.

The contract as amended, which is now before this court, contains provisions: (1) basing the price of the gas on its BTU content; (2) specifically providing there is no limitation upon the quality, quantity, number or kinds of products (hydrocarbons) that Warren could extract; (3) giving to High Plains the right to reject any residue gas which does not meet its quality specifications; and (4) allowing High Plains to cancel the contract if its quality specifications are not met for 30 days. Finally, the contract provides "there shall be no other penalty to Warren" in the event the quality specifications of High Plains are not satisfied.

The trial court ruled the contractual provisions limiting remedies for breach of contract apply to the implied warranties of merchantability and fitness for a particular purpose under the applicable portions of the Texas Uniform Commercial Code (U.C.C.). The trial court further held the limitation of remedies provision in the contract precluded High Plains' cause of action under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). The trial court granted Warren's motion for summary judgment as to all of High Plains claims.

We review the grant of a summary judgment motion under the same standard employed by the trial court. Our review is *de novo* because a ruling on the motion involves purely legal determinations. *See Missouri Pacific R.R. Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796, 798 (10th Cir.1988). In deciding these issues under our diversity jurisdiction, we apply the law of Texas. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hopper*, 751 F.2d 329, 332 (10th Cir.1984).

I

*The Contractual Limitation of Remedies*

■ On appeal, High Plains contends the trial court erred in using the contractual provisions limiting the remedies for breach of contract to exclude or modify all the implied warranties contrary to the U.C.C. provisions requiring conspicuous and explicit mention of merchantability for modification of that warranty. Tex.Bus. & Com.Code Ann. § 2.316(b) (Vernon 1968). We disagree. The trial court did not apply the contract provisions to exclude the implied warranties, rather it applied the contract provisions to limit the remedies available if a breach of either warranty occurred.

Next High Plains contends the contractual provisions may limit the remedies for breach of the contract, but those provisions fail to limit the remedies for breach of an implied warranty. We disagree.

The trial court found the language in the contract limits High Plains to two remedies: (1) rejection of the natural gas, which is not of merchantable quality; and (2) cancellation of the contract if the supply of gas remains below merchantable quality for more than thirty days. The trial court based this decision on the following contract clauses:

5. ... Buyer shall have the right to reject any residue gas that does not meet the following specifications....

. . . .

8. ... Should the BTU content of the residue gas delivered by Warren fall below 1,000 per Mcf for a continuous period of thirty (30) days ... Buyer shall have the right to cancel this agreement, but *there shall be no other penalty to Warren.*

Amendment to Gas Purchase Contract, ¶ 5; Original Residue Gas Sales Contract, ¶ 8 (emphasis added). The trial court further ruled the phrase emphasized above is an express agreement that rejection of the gas and cancellation of the contract are the sole remedies available to High Plains for lack of merchantability of gas. Memorandum Opinion at 4. We agree.

Under the U.C.C. as enacted by Texas, remedies for breach of warranty may be limited,[1] and remedies may be substituted for those provided in the U.C.C.[2] The contract language clearly limits the *remedy* for breach of an implied warranty. The U.C.C. prescribes no statement or language in order to constitute a limitation of a remedy. Any language which manifests to the buyer as a reasonable person that the contract is entered into on the basis of a specified limitation of a remedy is sufficient. 5 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 2–719:21, at 13 (3d ed. 1985). As said in the official commentary to § 2.719 of the U.C.C.: "Under this section parties are left free to shape their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."

Tex.Bus. & Com.Code Ann. § 2.719, Uniform Commercial Code Comment ¶ 1. The test is whether the plain meaning of the contract demonstrates an intent to limit the seller's liability. *See Fredonia Broadcasting Corp. v. RCA Corp.*, 481 F.2d 781, 797–98 (5th Cir.1973) (applying Texas law).

Looking at the clear and unambiguous language of the contract, and in particular that language emphasized in paragraph eight, we conclude the contract clearly demonstrates an intent to limit the seller's liability under the contract.[3] We hold that the contractual provisions limiting remedies, in this case, apply to the remedies for breach of implied warranties.

## II

### *The Application of the Texas Deceptive Trade Practices–Consumer Protection Act*

■ High Plains asserts the trial court erred in finding the limitation of remedies clause in the contract was a complete defense to the claim under the Texas Deceptive Trade Practices Act (DTPA).[4] The court reasoned the facts alleged in the DTPA claim were the same as the facts alleged in the breach of warranty claim. High Plains contends the limitation of remedies clause of the contract does not prohibit it from pursuing its statutory right of recovery under the DTPA. High Plains asserts the clear language of the "no waiver" provision of the DTPA prohibits the use of warranty disclaimers to preclude the

---

1. U.C.C. § 2.316 on modification of warranties states in part:

    *Remedies for breach of warranty can be limited* in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy (Sections 2–718 and 2–719). (Emphasis added.)

    Tex.Bus. & Com.Code Ann. § 2.316(d) (Vernon 1968).

2. U.C.C. § 2.719 on limitation of remedies states in part:

    (1) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's

remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and (2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy. Tex.Bus. & Com.Code Ann. § 2.719(a)(1) and (2) (Vernon 1968).

3. It is difficult to understand how there could be any implied warranties since the language of the contract seems to presuppose the quality of the gas might not be as specified and under these circumstances the buyer could reject the gas and if the poor quality continued, it could cancel the contract.

4. Tex.Bus. & Comm.Code Ann. § 17.41–17.63 (Vernon 1968).

right to bring an action under the DTPA. We frame the issue as whether the contractual provision limiting remedies for breach of the warranties of merchantability and fitness for a particular purpose is enforceable under the Texas Deceptive Trade Practices Act.

We first note that our task here is to interpret and apply the law of Texas as we believe the Texas Supreme Court would. *Rawson v. Sears, Roebuck & Co.*, 822 F.2d 908, 910 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 699, 98 L.Ed.2d 651 (1988) (citing *City of Aurora v. Bechtel Corp.,* 599 F.2d 382, 386 (10th Cir.1979), and *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir.1974)). Counsel for the parties have cited us to no Texas authorities directly in point and we are able to find none.

The DTPA is a statutory scheme designed to provide consumers with a remedy for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty action. *Pope v. Rollins Protective Servs. Co.,* 703 F.2d 197, 201 (5th Cir.1983). The statute contains a laundry list of twenty-four deceptive trade practices for which a consumer may maintain an action. Sections 17.46(b) and 17.-50(a). The DTPA also provides an action may be commenced for the breach of an implied warranty or unconscionable activity. Section 17.50(a)(2), (3). The cumulative remedies provision allows an action under the DTPA and any other laws. Section 17.43. The statute contains a "no waiver" provision, which states in pertinent part, "[a]ny waiver by a consumer of the provisions of this subchapter [the DTPA] is contrary to public policy and is unenforceable and void." Section 17.42.[5]

Texas' U.C.C. contains provisions allowing the effect of the U.C.C. to be varied by agreement, Tex. Bus. & Com.Code Ann.

§ 1.102(c) (Vernon 1968); allowing a claim arising out of a breach of an implied warranty to be discharged by written waiver, *id.* at § 1.107; allowing the exclusion of implied warranties, *id.* at § 2.719(a)(1).

The heart of this controversy is the "no waiver" provision of the DTPA.[6] The issue before this court is an apparent conflict in Texas law. On the one hand there is the provision in the U.C.C., as enacted by Texas, which clearly provides that remedies for breach of warranty can be limited. Tex. Bus. & Com.Code Ann. § 2.316(d) (Vernon 1968).[7] On the other hand we have the "no waiver" provision of the DTPA which provides "any waiver" of the provisions of the DTPA is unenforceable and void.

The first area of inquiry must be to determine whether or not the apparent conflict between the U.C.C. and the DTPA in fact exists. One possibility to be considered is that the DTPA repealed these portions of the U.C.C. by implication. We reject this possibility. Texas courts do not favor repeal by implication. *Conley v. Daughters of the Republic,* 106 Tex. 80, 156 S.W. 197, 201 (1913). The Texas courts have furthermore adopted the rule that in the absence of an express repeal, where there is no positive repugnance between the provisions of the old and new statutes, each statute should be construed, if possible, to give effect to both statutes. *Wintermann v. McDonald,* 129 Tex. 275, 102 S.W.2d 167, 171 (1937). Yet another reason for rejecting the possibility of the repeal by implication is the Texas U.C.C. itself. Section 1.104 provides that no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can be reasonably avoided.

The other possibility to be considered is that the "no waiver" provision of the DTPA does not affect the rights created by

---

5. The parties assume that High Plains is a "consumer" as defined in the DTPA, and that none of the various exceptions to the definition of a consumer contained in the DTPA apply. § 17.42. These issues are not before us; nor were they developed in the pleadings or factually in the trial court. We therefore assume that High Plains is a "consumer" as that term is used in the DTPA.

6. "Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void...." Tex.Bus. & Com.Code Ann. § 17.42 (West Pocket Part 1989).

7. *Supra* note 1.

§§ 2.316 and 2.719 of the U.C.C. to waive or exclude implied warranties and to substitute remedies. This would seem to be the common sense approach as to rule otherwise would mean that an implied warranty could never be excluded, regardless of the circumstances. For example, a used car seller could insist that an old truck would likely break down and for that reason could not be suitable for buyer's purposes. The buyer could insist that he is willing to take the risk. To hold the implied warranties could not be excluded under these circumstances would be bizarre.

The Texas courts have consistently held parties are free to limit or exclude implied warranties by contract under the U.C.C. regardless of the provisions of the DTPA. In 1982, the Supreme Court of Texas reversed a judgment under the DTPA for the purchasers of a house by giving effect to a disclaimer of the implied warranty of fitness. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982). In 1983, relying on *Robichaux*, the Texas Court of Appeals concluded the "no waiver" provision of the DTPA does not make unenforceable or void a disclaimer of the warranties of merchantability and of fitness for a particular purpose. *Ellmer v. Delaware Mini–Computer Systems, Inc.*, 665 S.W.2d 158, 160–61 (Tex.Ct.App.—Dallas 1983). In 1987, the Texas Supreme Court judicially created a new implied warranty that repairs would be performed in a good and workmanlike manner. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 352–54 (Tex.1987). The court held this warranty could not be waived or disclaimed in the small print of a standardized contract and overruled *Robichaux* "to the extent that it conflicts with this opinion." *Id.* at 355. We read *Melody Home* as including within the DTPA laundry list a judicially created warranty, which cannot be waived. This decision is consistent with excluding an implied warranty created under the U.C.C., which is not part of the DTPA laundry list.

In *McCrea v. Cubilla Condominium Corp. N.V.*, 685 S.W.2d 755 (Tex.Ct.App.—Houston 1985), a condominium purchaser brought suit against the builder alleging breach of express and implied warranties and violations of the DTPA because the roof leaked. In addressing the claim that the disclaimer of warranties in the contract was unenforceable under the "no waiver" provision of § 17.42 of the DTPA, the Texas Court of Appeals specifically held: "[W]hen a contract specifically states that no express or implied warranties are made, a cause of action for breach of express or implied warranties under the DTPA or contract law has been waived." *Id.* at 758. In *Eppler, Guerin & Turner, Inc. v. Purolator Armored, Inc.*, 701 S.W.2d 293, 296 (Tex.Ct.App.—Dallas 1985), a Texas Court of Appeals held that a limitation of liability claimed was not void under the "no waiver" provision of the DTPA and stated a contractual disclaimer or limitation of liability may bar a claim under the DTPA. *See also Singleton v. LaCoure*, 712 S.W.2d 757 (Tex.Ct.App.—Houston 1986), and *Harley–Davidson Motor Co. v. Young*, 720 S.W.2d 211 (Tex.Ct.App.—Houston 1986). All of these cases seem consistent with the principle that in Texas, the U.C.C. and the DTPA can and do successfully coexist.

Several Texas cases have drawn a distinction between a violation of the laundry list of deceptive practices and exclusion of warranties or limitation of remedies. For example in *Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914 (Tex.Ct.App.—Waco 1985), a jury found the seller had violated several subsections of the laundry list including misrepresentation under § 17.46(b)(5). The seller argued it could not be liable for misrepresentation because the disclaimer involved allowed the seller to make changes in the specifications at any time without notice. The court held the seller could not use the disclaimer to insulate itself from violations of the DTPA laundry list. *Id.* at 922. In *Reliance Universal, Inc. v. Sparks Indus. Servs., Inc.*, 688 S.W.2d 890 (Tex.Ct.App.—Beaumont 1985), the court stated the "no waiver" provision of the DTPA does not render contractual damages limitation clauses void and unenforceable in any and all cases. *Id.* at 892. However, the court distinguished the holding in this case finding the contract language limiting damages was not enforce-

able where the jury found the defendant had misrepresented the quality of the goods, a violation of the DTPA laundry list. The court stated that if the case involved solely a breach of contract or breach of warranty, the allowance of a limitation of damages clause to defeat recovery would be "somewhat persuasive." In *Martin v. Lou Poliquin Enters., Inc.*, 696 S.W.2d 180 (Tex.Ct.App.—Houston 1985), the court held that a limitation of liability clause may waive a party's right to recover for breach of contract but such a clause would not waive the right to recovery under the DTPA. For similar holdings *see International Nickel Co. v. Trammel Crow Distribution Corp.*, 803 F.2d 150, 155–56 (5th Cir.1986); *FDP Corp. v. Southwestern Bell Tel. Co.*, 749 S.W.2d 569, 570–71 (Tex. Ct.App.—Houston 1988); *Town East Ford Sales v. Gray*, 730 S.W.2d 796, 809 (Tex.Ct. App.—Dallas 1987); *Donnelly Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 603–04 (Tex.Ct.App.—Corpus Christi 1986); *Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785, 789 (Tex.Ct.App.—Fort Worth 1986); *NL Well Serv./Nl Industr., Inc. v. Flake Industr. Servs., Inc.*, 656 S.W.2d 584, 587 (Tex.Ct.App.—Fort Worth 1983).

We therefore conclude that the Supreme Court of Texas, if deciding the issue presented, would hold that a contractual clause limiting the remedies for breach of an express or implied warranty created under the Texas U.C.C., is valid and enforceable and is not void and unenforceable under the "no waiver" provision of the DTPA. We likewise think it clear under Texas law that if there is a violation of the "laundry list" under the DTPA then a limitation of remedies clause would be void and unenforceable under the DTPA.

The trial court found a limitation of remedies clause under U.C.C. § 2–316 is a complete defense "to claims" under the DTPA "as long as the facts alleged in the DTPA claim are the same as the facts alleged in the breach of warranty claim." We agree with this conclusion of law unless the party alleges a violation of one of the deceptive practices in the laundry list of deceptive practices specified in § 17.46 of the DTPA. In the instant case High Plains did not specify any violation of the laundry list.

As previously stated, High Plains grounded its claim on breach of contract and this is true in the complaint, the amended complaint and the pretrial order. The pretrial order summarized the contested issue of law as "[w]hether Defendant [High Plains] violated the DTPA if it supplied gas which did not comply with the buyer's express demands." We do not read this as charging a violation of one or more of the deceptive practices specified in the "laundry list." We therefore agree with the trial court's conclusion that the contract limitation of remedies clause was a complete defense to High Plains' claim under the DTPA.

### III

### *Good Faith and Fair Dealing*

High Plains asserts the defendant Warren had a duty to act in good faith in performing under the contract and this duty should override the contractual provisions that limit High Plains remedies to rejection of the gas and cancellation of the contract. High Plains is arguing that Warren's failure to make improvements in its gas collection system "breached the implied covenant of good faith in preventing plaintiff [High Plains] from meeting its obligations under the contract."

The trial court did not address this assertion in its ruling on Warren's motion for summary judgment as to all of High Plains' claims. In its response to Warren's motion for summary judgment, High Plains asserted that Warren had a good faith duty to perform. High Plains stipulated and agreed to the facts set forth in Warren's memorandum brief with two exceptions, which are not relevant herein. The agreed upon stipulation of undisputed material facts contains no facts which would support High Plain's claim of breach of good faith and fair dealing by Warren. High Plains asserts Warren consciously decided to defer the needed improvements to its system. The stipulated facts do not suggest or support such a conclusion.

The plain language of Fed.R.Civ.P. 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987). A party resisting summary judgment may not rely upon mere assertions but rather has the obligation to make a factual showing. High Plains failed to make any factual showing tending to support its assertion. The trial court properly granted summary judgment on the claim of breach of good faith.

The judgment of the trial court is AFFIRMED.