Michael M. BUECHER,
et al., Appellants,

v.

CENTEX HOMES, a Nevada Partnership, and Centex Real Estate Corporation d/b/a Centex Homes, Appellees.

No. 04–99–00337–CV.

Court of Appeals of Texas,
San Antonio.

March 31, 2000.

---

Bryan A. Woods, Bayne, Snell & Krause, San Antonio, for appellant.

Annalyn G. Smith, Bracewell & Patterson, L.L.P., San Antonio, Eugene A. Cook, Warren W. Harris, Bracewell & Patterson, L.L.P., Houston, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## ON APPELLEE'S MOTION FOR RE-HEARING AND APPELLEE'S MOTION FOR EN BANC RE-HEARING

Opinion by: PHIL HARDBERGER, Chief Justice.

Can a builder cause a homeowner to waive the implied warranty of habitability and good and workmanlike construction by getting the homeowner to sign a contract of adhesion? We hold he cannot. In so holding, we affirm our belief in the continued viability of *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349 (Tex.1987). *Melody Home* held that the implied warranty to perform repair services in a good and workmanlike manner cannot be waived.

> It would be incongruous if public policy required the creation of an implied warranty, yet allowed the warranty to be disclaimed and its protection eliminated merely by a pre-printed standard form disclaimer or an unintelligible merger clause.

*Melody Home,* 741 S.W.2d at 355.

The homebuilder in this case argues that the anti-waiver language in *Melody Home* only applies to the implied warranty relating to the repair of tangible personal property, and not the implied warranty relating to the construction of new homes. We disagree. The services in question in *Melody Home* were repairs to a modular home. But the rational of giving the consumer certain basic protections in this most important of possessions is the same. The burden on the homebuilder is not great: only that the home be built in a workmanlike manner and be fit for human habitation. It is a minimal standard, but it cannot be contracted away by requiring the homeowner to sign a contract in which

the homeowner is in an inferior bargaining position. This case is a good example. The homebuilder stated, in writing, it would not sell the home to the buyer unless the buyer agreed to give up his rights to the implied warranties of good and workmanlike construction and habitability. Why should a home buyer be forced to make such a Hobson's choice? He shouldn't.

### FACTUAL AND PROCEDURAL HISTORY

The standard form sales agreement of the homebuilder in this case, Centex Homes and Centex Real Estate Corporation d/b/a Centex Homes ("Centex"), contains a provision that waives the implied warranties of good and workmanlike construction and habitability with regard to new homes. The waiver provision states: "PURCHASER AGREES TO ACCEPT SAID HOMEOWNER'S WARRANTY AT CLOSING IN LIEU OF ALL OTHER WARRANTIES, WHATSOEVER, WHETHER EXPRESSED OR IMPLIED BY LAW, AND INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF GOOD WORKMANLIKE CONSTRUCTION AND HABITABILITY. PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER IS RELYING ON THIS WAIVER AND WOULD NOT SELL THE PROPERTY TO PURCHASER WITHOUT THIS WAIVER."

In place of the implied warranties, Centex agrees to deliver its standard form Limited Home Warranty against defects in workmanship and materials, a copy of which is made available to the homeowner.

The Homeowners allege, as part of a class action, that the waiver provision violates section 17.46(b)(12) of the DTPA. The Homeowners sought an injunction that would prevent Centex from asserting that the implied warranties had been waived, from relying on the waiver in disclaiming responsibility to homeowners, and a declaration that the waiver provision is unenforceable. Centex filed special exceptions, asserting that the Homeowners' allegations were contrary to existing law and further contending that it would be manifestly unjust to permit the Homeowners to proceed with a class action based solely on an argument for changing existing law. The trial court granted the special exceptions, striking the allegations relating to the unenforceability of the waiver provision, and dismissing the claims based thereon. The trial court severed the dismissed claims, and the Homeowners timely appealed.

### STANDARD OF REVIEW

A special exception is the proper method to determine whether the plaintiff has pled a cause of action. *Albright v. Texas Dept. of Human Services*, 859 S.W.2d 575, 582 (Tex.App.—Houston [1st Dist.] 1993, no writ). When a trial court dismisses a case upon special exceptions for failure to state a cause of action, the appellate court's review of this legal question is de novo. *Nichols v. Jack Eckerd Corp.*, 908 S.W.2d 5, 7 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Fernandez v. City of El Paso*, 876 S.W.2d 370, 372 (Tex. App.—El Paso 1993, writ denied). The appellate court is required to accept as true all factual allegations in the pleading. *Nichols*, 908 S.W.2d at 7; *Fernandez*, 876 S.W.2d at 372.

### DISCUSSION

In *Humber v. Morton*, 426 S.W.2d 554, 554 (Tex.1968), the widow Humber brought suit against a builder-vendor, alleging that the new home she purchased was not suitable for human habitation because an improperly constructed fireplace and chimney caused the house to catch fire. The lower courts held that the builder-vendor was not liable to Humber because the doctrine of caveat emptor applied to the sale of a new house by a builder-vendor, and consequently no implied warranty that the house was fit for human habitation arose from the sale. *Id.* at 555. After reviewing the trend against the application of the doctrine of caveat emptor both in Texas and other state court

decisions, the Texas Supreme Court asserted:

> The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work.

*Id.* at 562. The court held that a builder-vendor impliedly warrants that a new home that he builds and sells is constructed in a good workmanlike manner and is suitable for human habitation. *Id.*

In *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982), the Texas Supreme Court was presented with the question of what is sufficient to exclude the implied warranty of fitness created in *Humber.* Both parties agreed in *G–W–L* that the implied warranty could be waived by proper language. *Id.* The court held that the language waiving the implied warranty must be "clear and free from doubt." *Id.* The disclaimer language in *G–W–L* stated that there were no warranties, express or implied, in addition to those set forth in the listed documents. *Id.* The court reasoned that the parties to a contract have an obligation to protect themselves by reading what they sign, and the disclaimer language met the standard necessary to exclude the *Humber* warranty. *Id.*

The permissible waiver of implied warranties was revisited by the Texas Supreme Court five years later in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d at 355. In *Melody Home,* the court first considered whether the protection of Texas consumers required the adoption of an implied warranty that repair services of existing tangible goods or property would be performed in a good and workmanlike manner. *Id.* at 353. After examining the policies favoring the adoption of such an implied warranty, the court held that an implied warranty to repair or modify existing tangible goods or property in a good

and workmanlike manner is available to consumers suing under the DTPA. *Id.* at 354. The court next considered whether the implied warranty could be waived and held that public policy precluded such a waiver by a pre-printed standard form disclaimer or an unintelligible merger clause.

■ Centex contends that this waiver prohibition language must be read narrowly as only prohibiting the waiver of the implied warranty with regard to repair services. Centex first notes that the waiver with regard to new homes is permissible because the Homeowners are adequately protected by the Residential Construction Liability Act ("RCLA"). However, the RCLA is not designed to supplant the implied warranty. *See* William T. Little & Stephen Paxson, *Builder Liability of the Implied Warranties of Good Workmanship and Habitability and the Builder's Statute of Repose,* 56 Tex. B.J. 462, 462 (1993) (noting construction defect claim based upon an alleged breach of an implied warranty will generally be brought under the provisions of the DTPA or the RCLA). As noted in the article Centex cites in asserting its RCLA argument, "there is no clear authority as to the legal effect of a disclaimer of such implied warranties in connection with new construction." *Id.*

Centex also argues that the waiver of implied warranties should be permitted because the express warranties provided in lieu of the implied warranties serve the "gap-filler" function which the implied warranties are designed to satisfy. Centex's contention rests on its premise that the warranties are implied to fulfill this "gap-filler" function. However, the *Humber* court noted that the purpose of the implied warranty was to discourage unscrupulous, fly-by-night operators and purveyors of shoddy work. It was this same concern with regard to discouraging shoddy workmanship that led the *Melody Home* court to adopt the prohibition against waiver. As the court noted, permitting disclaimers would lead to the development of adhesion "take it or leave it"

contracts. The warranty provision in Centex's standard form contract exemplifies this concern because it provides: "PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER IS RELYING ON THIS WAIVER AND WOULD NOT SELL THE PROPERTY TO PURCHASER WITHOUT THIS WAIVER."

## CONCLUSION

In 1968, the Texas Supreme Court adopted the implied warranty relating to new home construction. *Humber*, 426 S.W.2d at 554. In 1987, the Court reasoned that the same public policy considerations that require the creation of an implied warranty prevent the warranty from being disclaimed and its protection limited by a pre-printed standard form disclaimer. *Melody Home*, 741 S.W.2d at 355. We conclude that this reasoning applies with equal force to the implied warranty relating to new home construction. The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Concurring Opinion by: PAUL W. GREEN, Justice.

Dissenting Opinion by: SARAH B. DUNCAN, Justice, joined by Justice, KAREN ANGELINI.

PAUL W. GREEN, Justice, concurring.

The question is whether a consumer may contract away the implied warranties of habitability and good and workmanlike performance in the construction of a new home. The majority says such warranties cannot be waived or disclaimed, relying on *Melody Home Mfg. Co. v. Barnes*, 741

S.W.2d 349 (Tex.1987). I must reluctantly concur.

The identical question was presented to the supreme court in *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982). In that case, the court unanimously held that the implied warranty of fitness created by *Humber v. Morton*, 426 S.W.2d 554 (Tex. 1968) could be disclaimed by agreement. *See Robichaux*, 643 S.W.2d at 393. The court split, however, over the quality of language that must be used to create an effective waiver. The majority held the language must only be "clear and free from doubt." *Id.* The dissent argued that "the better rule is the waiver must be in *clear and unequivocal* language specifically naming the warranty that is being disclaimed." *Id.* at 394 (Spears, dissenting) (emphasis in original). In this case, the purchasers agreed to accept the homeowner's warranty "in lieu of all other warranties, whatsoever, whether expressed or implied by law, and *including but not limited to the implied warranties of good workmanlike construction and habitability.*" (emphasis supplied). This language satisfies even the more rigorous test advocated by the dissent in *Robichaux*.

Five years after deciding *Robichaux*, the supreme court for the first time recognized an implied warranty for services related to the repair or modification of existing tangible goods or property. *See Melody Home*, 741 S.W.2d at 354. The court then went further and held that this implied warranty could not be waived. *Id.* at 355.[1] Moreover, and of particular importance in this case, the court suggested that *Robichaux* was inconsistent with its holding. *Id.* ("To the extent that it conflicts with this opinion, we overrule [*Robichaux*].").

1. Parenthetically, it should be noted that the anti-waiver holding of *Melody Home* has nothing to do with the facts of that case and is only dicta. No attempted waiver of implied warranties was involved. Moreover, the question of whether a consumer could waive an implied warranty of habitability or good and workmanlike repair was never raised by the parties. *See* 741 S.W.2d at 356 n. 1 (Gonzalez, concurring). The issue before the

court was purely whether the homebuilder/repairer had breached the *Humber* implied warranty of habitability, and whether a service provider was liable for breach of an implied warranty to render repair services in a good and workmanlike manner. *Id.* Notwithstanding that the anti-waiver holding is dicta, it is difficult to ignore the fact that the court specifically overruled *Robichaux*. *Id.* at 355.

Thus, on the basis of the rationale expressed in *Melody Home*, the majority disregards *Robichaux* and holds that the *Humber* implied warranty for new home construction may not be waived. Although I believe this is what the supreme court intended in *Melody Home*, I believe the court was wrong to extend the non-waiver holding to implied warranties in new homes. However, because I am bound to follow supreme court precedent, I must concur in the result.

\* \* \*

I write separately because I believe *Melody Home* should be reconsidered, at least with respect to its holding that new home implied warranties cannot be negotiated away by the parties. The reason given for the anti-waiver holding in *Melody Home* was the supreme court's concern that parties in unequal bargaining positions might be forced into accepting warranty disclaimers on a "take it or leave it" basis. *See Melody Home*, 741 S.W.2d at 355. That may be a legitimate concern where the service provider is in a superior bargaining position to the consumer. In *Melody Home*, for example, the consumer was essentially in a captive position-he purchased what was represented as a habitable mobile home and, when there were problems, he expected the manufacturer to repair the defects in a good and workmanlike manner. Although there was no disclaimer of warranty in that case, the supreme court nonetheless determined that any attempted disclaimer would have been unenforceable because the consumer, without any effective means to negotiate with the manufacturer, would have had little choice but to accept the terms of the repair service provided. *Id.*

But where the parties are in an equal bargaining position, there is no legitimate reason why the parties should not be allowed to freely negotiate the existence or the scope of the warranties of habitability and good and workmanlike performance. As noted above, this principle was not even questioned by the court in *Robichaux*. 643 S.W.2d at 393. In *Robichaux*, a new-home purchaser sued the seller-builder for alleged defects in the house. The purchaser had agreed to waive the implied warranties in the sales contract, but he argued that the waiver language was inadequate to be effective. The supreme court held the waiver language in the contract was enforceable, reiterating the long-held rule that "[t]he parties to a contract have an obligation to protect themselves by reading what they sign." *Id.* The implication is that the court considered the parties to have been on an equal footing in their ability to negotiate the terms of their home purchase contract.

Every day throughout the state, home buyers negotiate with home sellers over the terms of the transaction. As it happens, some consumers are better negotiators than others. But they all share the position of greatest strength in the transaction-the ability to walk away from a deal they do not like. Unlike the mobile home owner in *Melody Home* who was, as a practical matter, forced to look to the manufacturer to repair defects in his home, a prospective new-home purchaser is not forced by circumstances or any other reason to buy a home under a contract that waives the implied warranties. To the extent the majority considers such a transaction to be a contract of adhesion, I must respectfully disagree.

*Melody Home*, in the course of making a good point, went much too far by broadly condemning any attempt by the parties to a new-home sale to freely negotiate an agreement that substitutes contractual warranty provisions for the legally implied warranty. The better and more practical solution seems to be that which was expressed by the supreme court in *Robichaux*-simply make sure that the disclaimer of implied warranties is made known to the consumer in language that is "clear and free from doubt," or "clear and unequivocal," or however the court chooses to express the degree of notice that must be given to the consumer.

Centex Homes argues, quite rightly, that *Robichaux* should control this case. And while I may agree with the reasons given, the fact remains that *Robichaux* was overruled by *Melody Home.* Accordingly, I am constrained to follow what I believe is an ill-considered extension of the *Melody Home* non-waiver holding to new home sales. Perhaps this case will provide a means for the supreme court to re-examine the scope of *Melody Home* and, hopefully, reestablish the more reasonable approach to the issue articulated in *Robichaux.*

SARAH B. DUNCAN, Justice, dissenting, joined by Justice, KAREN ANGELINI.

I respectfully dissent. In the context of the implied warranties involved in this case, *Robichaux* survives *Melody Home* and remains the law that binds this court. I would therefore follow *Robichaux.* If *Melody Home* is to be extended, it is the prerogative of the Supreme Court of Texas, not this court.

"[A]n action for breach of warranty is not a creation of the [Texas Deceptive Trade Practices] Act." *Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576 (Tex.1991). Therefore, to determine the nature and extent of the warranty at issue, we must refer to the source by which the warranty was created. *Id.* at 576–77. The warranty of habitability is a creature of the common law, created by the Texas Supreme Court in *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968), and, under the common law, it may be waived. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 393 (Tex.1982) (holding warranty was waived because disclaimer was "clear and free from doubt"); *see also id.* at 394–95 (Spears, J., dissenting) (advocating that the better rule would require the waiver to be in *"clear and unequivocal* language specifically naming the warranty that is being disclaimed").

The majority holds the implied warranty may not be waived, relying upon the reasoning in *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987).

But, as the concurrence points out, *Melody Home* did not involve the implied warranties involved in this case. *Id.* (holding the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner may not be waived and overruling *Robichaux* "[t]o the extent that it conflicts with this opinion"). And, unlike my colleagues, I believe we are bound by *Robichaux* unless and until it is overruled in material part.