

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00418-CV

**IN RE WOOD GROUP PSN INC.**, Miller Environmental Services L.L.C., Star Tex Gasoline & Oil Distributors Inc., Basic Energy Services Inc., Cameron Inc., Chacho's Vacuum Service Inc., Coastal Chemical Co. L.L.C., Flint Energy Services Inc., FTS International Services L.L.C., Helmerich & Payne International Drilling Co., Mission Petroleum Carriers Inc., Murphy Exploration & Production Company - USA, Murphy Oil Corporation, Plains All American Pipeline L.P.

Original Mandamus Proceeding[1]

Opinion by:     Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Irene Rios, Justice

Delivered and Filed:  October 3, 2018

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED IN PART AND DENIED IN PART

Relators are twenty-two of a total twenty-nine oilfield businesses sued by Dimmit County for damage to County roads allegedly caused by the defendants'[2] vehicles. These twenty-two relators moved for dismissal of the County's claims against them. Twenty of the relators moved for dismissal under Texas Rule of Civil Procedure 91a; one relator moved for dismissal only on

---

[1] This proceeding arises out of Cause No. 13-05-11980-DCVAJA, styled *County of Dimmit v. Murphy Exploration & Production Co., et al.*, pending in the 365th Judicial District Court, Dimmit County, Texas, the Honorable Amado J. Abascal, III presiding.

[2] As used in this opinion, "defendants" refers to all twenty-nine defendant-companies named in the County's petition, unless otherwise specifically identified.

special exceptions; and one relator joined these motions. The trial court denied the requested relief. In their petition for writ of mandamus, relators ask this court to compel the trial court to vacate its denial and dismiss Dimmitt County's claims against them. We conditionally grant the petition for writ of mandamus with regard to the Rule 91a motion to dismiss and deny the petition with regard to the request for dismissal based on special exceptions.

## BACKGROUND

In its third amended petition, Dimmitt County alleged the twenty-nine defendants—all companies operating in the oil and gas industry—severely damaged or destroyed a Dimmitt County-owned road commonly referred to as the Diamond H. Ranch Road (the "Road"). According to Dimmitt County, the defendants access oil and gas leases, and/or drill sites, and/or oil, gas, and other minerals along the Road, including but not limited to ranches and leases along and through approximately 6.9 miles of the Road. Dimmitt County alleged the defendants, beginning in 2011 and thereafter, singularly or jointly, negligently and intentionally used the Road in a manner that damaged or destroyed the Road. The County alleged claims for negligence, negligence per se, and gross negligence.

Twenty relators filed a second amended motion to dismiss under Rule 91a in which they alleged the County's "group pleadings" failed to identify specific instances of damage-causing negligence, failed to attribute any damage or damage-causing negligence to a specific defendant and were conclusory.[3] Relators also alleged they could not be held liable for "normal" use of the Road or for ordinary wear and tear of the Road. Finally, relators alleged the County's allegation that the defendants each contributed to an indivisible injury for which they are jointly and severally

---

[3] This motion was filed after the County filed its second amended petition. When the County filed its third amended petition, these relators elected to stand on their second amended motion to dismiss.

liable has no basis in law. Relators asked that the County's claims against them be dismissed with prejudice.

Another relator filed a first amended special exceptions and motion to dismiss.[4] This relator alleged the County's negligence and gross negligence claims had no basis in law because it did not owe the County a duty to repair or maintain the Road.

The twenty-second and last relator filed a joinder in and adoption of the above motions.

After a May 8, 2018 hearing, the trial court denied the motions, and the twenty-two relators filed a single petition for writ of mandamus. Dimmitt County filed a response, to which relators replied.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show "that the trial court could reasonably have reached only one decision." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

---

[4] This motion was filed after the County filed its second amended petition. When the County filed its third amended petition, this relator elected to stand on its first amended special exceptions and motion to dismiss.

The denial of a Rule 91a motion to dismiss is subject to mandamus review. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526, 528 (Tex. 2014) (orig. proceeding) (per curiam) (reviewing denial of Rule 91a motion to dismiss and concluding mandamus relief appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings). Mandamus review of the denial of a motion to dismiss based on special exceptions may be appropriate "for trial court errors where the very act of proceeding to trial, regardless of the outcome, would defeat the substantive right involved." *In re XTO Energy Inc.*, 471 S.W.3d 126, 136 (Tex. App.—Dallas 2015, no pet.) (concluding trial court abused its discretion by failing to grant relators' special exceptions and dismiss the claims).

## RULE 91a MOTION TO DISMISS

Rule 91a provides, in pertinent part, as follows:

91a.1 Motion and Grounds. Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

91a.2 Contents of Motion. A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

. . .

1a.6 Hearing; No Evidence Considered. Each party is entitled to at least 14 days' notice of the hearing on the motion to dismiss. The court may, but is not required to, conduct an oral hearing on the motion. Except as required by 91a.7, the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.

Tex. R. Civ. P. 91a.

**A.      The County's Allegations**

The relators who filed the Rule 91a motion to dismiss first asserted liability cannot be premised on normal use of a road or gradual wear-and-tear damage.  Relators contend the County's allegations show only "normal" use of the Road and the County's allegations of "abnormal" use are merely conclusory.

The County alleged the following:

1.  Since 2011, the defendants used the road "in an abnormal, unreasonable, and negligent manner causing substantial, excessive and unnecessary damage to the Road far above and beyond normal wear and tear, with each act of negligence causing contemporaneous damage to the Road.

2.  The County provided a "non-exclusive list of the approximate dates of nineteen severe rain events" during which the defendants "were known to have" "negligently and intentionally driven and operated their vehicles and heavy equipment through, over, and across the Road" from approximately 2013 to the present.  The County alleged that during the severe rain events the Road "was drenched by rain and particularly susceptible to damage from vehicles of the type driven by" the defendants.

3.  Each defendant engaged in the above conduct on one or more of the listed rain event dates.  The dates were retrieved from documents produced by one of the defendants and include gate guard logs reflecting defendants' use of the Road on or around the rain events; specify the date, type of vehicle; and, in many instances, specify the license plate of vehicles driven by defendants on the Road from 2013 to 2015.

4.  Non-asphalt roads—such as the Road—are not designed to accommodate oil field traffic, heavy equipment, heavy vehicles, and other "abnormally-used objects" during and a reasonable time after rain events.  Defendants failed to properly consider and evaluate whether the surface of the non-asphalt-paved Road could accommodate the vehicles, heavy equipment, and other objects of the size, weight, and speed of those that the defendants used on the Road during and a reasonable time after rain events.  The risk of damage to the Road by the manner and methods of the defendants' use of the Road was "readily foreseeable to a reasonable person."

5.  Defendants observed that the use of their vehicles caused severe damage to the Road, but they continued to use the Road in the same manner without taking any precautions, with conscious disregard for the fact that additional severe damage would be caused to the Road.  Defendants' "abnormal" use of the Road was "negligent, intentional, and contrary to the normal and expected use and means of transport of the Road."

- 5 -

The petition also specifically identified twenty-six defendants by name, of whom nineteen are relators. Regarding these relators, the County alleged that "on several dates but not limited to" specified dates, the defendant "negligently operated vehicles . . . on the Road during a severe rain event, and [was] believed to have engaged in additional negligent operations on other dates."

Based on these allegations, the County asserted defendants owed the County a duty to not damage the Road.

**B.    Analysis**

When considering a Rule 91a motion to dismiss, the trial court construes the pleadings liberally in favor of the plaintiff, looks to the plaintiff's intent, and accepts the plaintiff's factual allegations as true. *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 450 (Tex. App.—San Antonio 2016, pet. denied). If necessary, the trial court may draw reasonable inferences from the factual allegations to determine if the cause of action has a basis in law or fact. *Id.* at 451. Although a plaintiff's factual allegations are taken as true, the same deference is not afforded to a plaintiff's legal conclusions or conclusory statements. *Id.* The determination of whether a cause of action has any basis in law and in fact are both legal questions that we review de novo, based on the allegations of the live petition and any attachments. *Id.*

Based on the County's allegations, we take as true that the defendants' use of the Road resulted in severe damage to the Road. The only "duty" the County alleges defendants owed was "to not damage the Road." The County does not allege defendants had a duty to repair or maintain the Road or warn of a dangerous condition on the Road.

The alleged "duty to not damage" is similar to the doctrine of waste, which "reflects the implicit duty of a tenant to exercise reasonable care to protect the leased premises from injury other than by ordinary wear and tear. Because the tenant has such a duty, its breach constitutes waste." *King's Court Racquetball v. Dawkins*, 62 S.W.3d 229, 233 (Tex. App.—Amarillo 2001,

no pet.). Thus, the dispositive issue in this mandamus proceeding is whether relators had a duty to exercise reasonable care to protect the County's Road from injury other than by ordinary wear and tear.

Relators rely on this court's opinion in *Vasquez*, which involved allegations that the defendants owed the plaintiff a duty to repair a damaged road or a duty to warn of a dangerous condition created on the road. The "sole issue on appeal [was] whether [the defendants had] a legal duty to act to prevent [Jose] Vasquez's death from the dangerous situation on Krueger Road that [the defendants] themselves created." This court took as true appellant's allegations that the defendants' "continuous and allegedly negligent acts created a dangerous condition on the roadway in question (i.e., a dilapidated road)." *Id.* at 451-52. Therefore, the issue became whether appellant's pleadings sufficiently showed a basis in law that the defendants owed a legal duty to Jose to repair the road or warn of a potentially dangerous condition on the road. *Id.* at 452. The court concluded defendants owed no legal duty to repair the road because that duty remained with the governmental entity that controlled the road. *Id.* at 454. The court also concluded defendants owed no legal duty to warn of a potentially dangerous condition based on an inference that the road was designed for all forms of traffic, including defendants' work-related vehicles. *Id.* at 455. Therefore, the court affirmed the Rule 91a dismissal.

The *Vasquez* court relied on the Texas Supreme Court's opinion *Grapotte v. Adams*, 130 Tex. 587, 111 S.W.2d 690 (1938), which involved a duty to exercise ordinary care to maintain a sidewalk. In that case, a hole or depression was caused by motor vehicles passing over the sidewalk, and the use of the sidewalk by the defendant in having his customers pass over it had deepened the hole or depression to some extent. The Supreme Court assumed, for the purposes of the opinion, that the defendant contributed to cause this depression by inviting his customers to cross over the sidewalk. *Grapotte*, 111 S.W.2d at 691. However, the Court concluded no cause

of action against the defendant existed because the sidewalk was a part of the street and "the duty to exercise ordinary care to maintain such sidewalk in a reasonably safe condition for the use of the public rests upon the city, and not upon the abutting property owner." *Id.* According to the Court, the defendant "committed no unusual, wrongful, or unlawful act which caused the hole or depression here involved." *Id.*

The *Vasquez* court also cited to *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 109 (1942), which considered "whether one who drives over a bridge on a public road and thereafter discovers that such bridge, because of its defective condition, has broken down under the weight of his vehicle, without negligence on his part, is under any duty to give warning so as to prevent other travelers from being injured as a result of the broken bridge." The Court determined the driver had no duty

> because the bridge was already in a defective condition. It was insufficient in strength to carry a normal load. It merely gave way as the result of the usual and legitimate use of the road. It fell as a result of its own inherent defects. Defendant was merely the victim of a defective condition that already existed. It would be carrying the matter too far to say that one must give notice of every known defect in a road naturally resulting from his normal and legitimate use thereof. To so hold would make the use of the highways too hazardous from the standpoint of public liability.

*Id.* at 110.

Although *Buchanan*, *Grapotte*, and *Vasquez* involved different legal duties, we believe the opinions provide some guidance here because the courts considered *how* the property was used by the defendant. In *Buchanan*, the Court determined the defendant "was merely the victim of a defective condition that already existed." *Id.* In *Grapotte*, the Supreme Court determined the "[d]efendant committed no unusual, wrongful, or unlawful act which caused the hole or depression" and it "was not unusual, wrongful, or unlawful for him to conduct his garage business in the way that he did." *Grapotte*, 111 S.W.2d at 691-92. The *Grapotte* Court noted "many cars

- 8 -

passed over this sidewalk as [defendant's] invitees, but such fact simply shows the degree or quantity of use—not an unusual use in a legal sense, and not a wrongful or an unlawful use." *Id.* at 692. In *Vasquez*, the court stated, "[e]ven taking all of [appellant's] factual allegations as true, [the defendants'] employees were driving work-related vehicles on a roadway designed for vehicular traffic. Because there is no allegation the roadway was only intended for a specific group, for example, passenger vehicles, we infer from the pleadings that Krueger Road was designed for all forms of traffic, including [the defendants'] work-related vehicles and Jose's vehicle." *Vasquez*, 492 S.W.3d at 455.

We believe the County's contention that relators used the Road in an "abnormal" manner is conclusory. The County admitted in its petition that the Road is a non-asphalt-paved road "not designed to accommodate oil field traffic, heavy equipment, heavy vehicles, and other abnormally-used objects during and a reasonable time after rain events." However, as in *Vasquez*, "there is no allegation the [Road] was *only* intended for a specific group, for example, passenger vehicles." 492 S.W.3d at 455 (emphasis added). There also is no allegation the County posted any notice that heavy vehicles could not use the Road during and a reasonable time after rain events. Even taking all the County's factual allegations as true, relators' employees were merely driving work-related vehicles on a roadway designed for vehicular traffic.

As in *Grapotte*, we conclude relators did not commit any "unusual, wrongful, or unlawful act which caused the [damage to the Road] here involved." 111 S.W.2d at 691. "It certainly was not unusual, wrongful, or unlawful for [relators] to conduct [their business] in the way that [they] did." *Id.* at 691-92. Taking as true the County's allegations that relators drove their vehicles over the Road during rain events, "such fact simply shows the degree or quantity of use—not an unusual use in a legal sense, and not a wrongful or an unlawful use." *Id.* at 692; *see also Jezek v. City of*

*Midland*, 605 S.W.2d 544, 548 (Tex. 1980) ("[t]here can be no more 'normal use' of a roadway than to be driven upon by a motor vehicle.").

Although relators may have had a moral duty to not damage the Road, we cannot say they had a legal duty. Therefore, we conclude the County's pleading failed to show a basis in law that relators had a legal duty to not damage the Road and the trial court erred in denying the Rule 91a motion to dismiss.

## SPECIAL EXCEPTIONS

"A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." TEX. R. CIV. P. 91. "A special exception is the proper method to determine whether the plaintiff has pled a cause of action." *Buecher v. Centex Homes*, 18 S.W.3d 807, 809 (Tex. App.—San Antonio 2000), *aff'd but criticized on other grounds*, 95 S.W.3d 266 (Tex. 2002). A defendant may thus challenge the sufficiency of plaintiff's pleadings to state a cause of action by specifically pointing out the defect or reason the claim is invalid. *Ortega v. Trevino*, 938 S.W.2d 219, 220 (Tex. App.—Corpus Christi 1997), *rev'd on other grounds*, 969 S.W.2d 950 (Tex. 1998). A trial court's decision on the legal question of whether to dismiss a case upon special exceptions for failure to state a cause of action is reviewed de novo. *Buecher*, 18 S.W.3d at 809.

One of the relators filed a first amended special exceptions and motion to dismiss. This relator alleged the County's negligence and gross negligence claims had no basis in law because it did not owe the County a duty to repair or maintain the Road. As stated above, the only duty alleged in the County's petition was a duty to not damage the Road. The County did not assert any defendant had a duty to repair the Road or maintain the Road. We conclude the special exceptions lacked the necessary specificity because the defect alleged by this relator—no duty to

repair or maintain—is not a basis for the County's claim. Therefore, the trial court did not err in denying the motion to dismiss based on special exceptions.

## CONCLUSION

For the reasons stated above, we conclude the trial court erred by not granting the Rule 91a motion to dismiss and the twenty relators who filed the motion, plus the one relator who joined the motion, should have the County's claims against them dismissed. Accordingly, we conditionally grant relators' petition for writ of mandamus with regard to the Rule 91a motion to dismiss and direct the trial court to: (1) vacate that portion of its order denying the Rule 91a motion to dismiss; and (2) grant the Rule 91a motion to dismiss. The writ will issue only in the event the trial court fails to comply within fifteen days from the date of this opinion.

We also conclude the trial court did not err in denying the motion to dismiss based on special exceptions. Therefore, relators' petition for writ of mandamus with regard to the First Amended Special Exceptions and Motion to Dismiss is denied. We also deny relators' request that they recover costs of this mandamus proceeding from the County.

Marialyn Barnard, Justice